**In the Matter of the DISCIPLINE OF Mark H. TANNER, Bar No. 05015.**

No. 960541.

Supreme Court of Utah.

June 26, 1998.

Stephen R. Cochell, Kate A. Toomey, Salt Lake City, for Utah State Bar.

Brent D. Ward, Bret F. Randall, Salt Lake City, for Mark H. Tanner.

DURHAM, Associate Chief Justice:

The Utah State Bar (the Bar) appeals from a district court order suspending attorney Mark H. Tanner from the practice of law. We hold that Tanner's conduct requires disbarment, not merely suspension.

### I. Facts

In 1989, Hurdley Evans hired Tanner to represent him in his attempt to recover $100,089 that Emery County authorities had seized from him. After various legal twists and turns, in May 1992, the United States Attorney's Office offered to settle the action by paying Evans $10,089—one tenth of the seized amount. Tanner accepted the settlement offer without Evans' permission after unsuccessfully trying to contact him. To accept the settlement, Tanner forged and backdated a Special Power of Attorney. Tanner then had his wife, a notary, notarize the document with an expired seal to lend the document authenticity.

Tanner presented the document to an Assistant United States Attorney and settled the case. The attorney, relying on the forged document, turned the funds over to Tanner on December 23, 1992. Tanner, still without contacting his client, took $5,089 of the returned amount for himself as attorney fees and expenses. A short time later, Evans finally called Tanner's office. At that time Tanner told Evans about the settlement. One month later, Evans came to Tanner's office. Tanner told Evans that he intended to keep the entire settlement amount as his fee. Evans disagreed with this fee arrangement.

On December 22, 1993—a year after the settlement—a Federal Bureau of Investigation (FBI) agent questioned Tanner and his wife about the Special Power of Attorney. The two lied to the agent about the date of the document's preparation and the signature thereon. By this time, Tanner had started to serve as Emery County Attorney, an elected office.

Evans, in the meantime, found a new attorney and moved on January 13, 1994, to set aside the unauthorized settlement Tanner had negotiated. On January 25, 1994, Tan-

ner retained an attorney, contacted the FBI agent, and made a full confession. The federal government then charged Tanner with intentionally making and using a false document in violation of 18 United States Code section 1001, and Tanner pled guilty to that felony. Tanner has since returned the $10,089 to the United States Attorney's Office, paid more than $10,000 in fines, and performed community service.

Based on the foregoing facts, the Bar brought a disciplinary action against Tanner. The trial court found that disbarment was the presumptively appropriate sanction given Tanner's admittedly criminal conduct but ordered suspension instead because it believed that the mitigating factors weighed in favor of that sanction.

## II. Standard of Review

■ "Review of attorney discipline proceedings is fundamentally different" from judicial review in other cases. *In re Babilis*, 951 P.2d 207, 213 (Utah 1997). Given the uniqueness of disciplinary actions, we reserve the right to draw our own inferences from the trial court's factual findings, which we review under the clearly erroneous standard. *Id.; State v. Pena*, 869 P.2d 932, 935–36 (Utah 1994). Furthermore, if the evidence warrants, "we may make an independent judgment regarding the appropriate level of discipline." *In re Babilis*, 951 P.2d at 213.

## III. Analysis

The trial court correctly concluded that the presumptively appropriate sanction was disbarment but incorrectly applied the aggravating and mitigating circumstances to arrive at its final sanction. Tanner's misconduct and the lower court's own comments about his behavior lead us to order Tanner's disbarment rather than suspension.

### A. Presumptively Appropriate Sanction

Tanner settled a case without contacting his client, forged the client's signature, kept the settlement amount from the client, and then lied to an FBI agent about his activities. Tanner also pled guilty to false swearing, a felony requiring an intent to deceive. In accordance with that evidence, the lower court found that Tanner violated the Rules of Professional Conduct in multiple ways: (1) Rule 8.4(a)—violating the Rules of Professional Conduct through another's acts, (2) Rule 8.4(b)—committing a criminal act indicating dishonesty, (3) Rule 8.4(c)—being dishonest, and (4) Rule 8.4(d)—conducting oneself in a manner prejudicial to the administration of justice.

■ Rule 4 of the Standards for Imposing Lawyer Sanctions states:

[4.2] Disbarment is generally appropriate when a lawyer:

(a) knowingly engages in professional misconduct as defined in Rule 8.4(a),(d),(e), or (f) of the Rules of Professional Conduct with the intent to benefit the lawyer or another or to deceive the court, and causes serious or potentially serious injury to a party, the public, or the legal system, or causes serious or potentially serious interference with a legal proceeding; or

(b) engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft.

Standards for Imposing Lawyer Sanctions R. 4.2. Because the trial court found that Tanner knowingly engaged in professional misconduct under rule 8.4(a) and that he pled guilty to false swearing, his actions clearly fell within the province of rule 4.2(a) and (b). Thus, the trial court correctly concluded that disbarment was the presumptively appropriate sanction for Tanner's behavior.

As stated by the district court:

This is a difficult case for the Court in light of the findings of misconduct. Tanner's misconduct adversely reflects on his honesty, trustworthiness and fitness as a lawyer and reflects badly upon the profession. The violations are grievous. Under the Rules violated, the Court would have to find much more in mitigation to depart from disbarment.

### B. Aggravating and Mitigating Factors

■ After determining that the presumptively appropriate sanction was disbarment, the trial court then looked to the aggravating and mitigating factors enumerated in the Standards for Imposing Lawyer Sanctions for guidance in assigning the final sanction. *See* Standards for Imposing Lawyer Sanctions R. 6.1. "To justify a departure from the presumptive level of discipline set forth in the Standards, the aggravating and mitigating factors must be significant." *In re Ince*, 340 Utah Adv. Rep. 53, 55, 957 P.2d 1233, 1237–38 (Utah 1998). Because we find that the trial court accorded undue weight to the mitigating factors, we conclude that the court erred in modifying the presumptive level of discipline. *See id.*

Rule 6 provides a non-exclusive list of circumstances a court should consider as aggravating or mitigating. *See In re Babilis*, 951 P.2d at 215 n. 15; Standards for Imposing Lawyer Sanctions R. 6. In considering those factors, the trial court found numerous aggravating factors. Tanner had a record of misconduct which included the misuse of a notary on another occasion. As a sanction, Tanner received a letter of caution requiring him to educate himself and his wife about the new notary public regulations. The trial court also found that Tanner acted in his own interests, not those of his client, both in settling the case quickly so he could take office as county attorney and in keeping the funds to enrich himself.[1]

Furthermore, Evans was highly vulnerable to Tanner's actions because of his adversarial relationship with the police and recurring absences from his home. Tanner might have expected Evans to distrust government authorities so much that he would avoid reporting any suspected misconduct. Evans' lifestyle increased the chances that he would not notice Tanner's wrongdoing in time to do anything about it. Professional ethics require that an attorney not take advantage of a vulnerable client simply because he can.

The trial court also found that Tanner failed to acknowledge his wrongful conduct until after a newspaper article exposing him became imminent and did not attempt to correct the situation until after Evans had uncovered his misconduct. These factors weigh against Tanner because they show that he attempted to avoid responsibility for his actions until discovery became inevitable.

Lastly, the trial court was unable to find any explanation or excuse for Tanner's behavior. Tanner was not under any emotional or financial pressure and had a clear mind when he committed the misconduct. We also note that some of Tanner's deception took place while he held elected office. Although this factor does not appear on the list of aggravating circumstances in the rules, it is certainly a valid consideration in this case. We generally hold public officials to higher ethical standards because they must act in the best interest of the public, not merely their clients.

We therefore conclude that the multiple aggravating factors in this case—a record of misconduct, taking advantage of a vulnerable client, absence of mental, emotional, or financial difficulties and lack of remorse prior to exposure—would in fact justify an increase in the degree of discipline imposed.

Nevertheless, this court must also consider the mitigating factors. The trial court relied on Tanner's inexperience in practicing law, his generally good character and reputation, and his remorse at trial. We disagree with the trial court's assessment of these factors. With regard to all mitigating factors, courts must consider them in light of the particular misconduct, not in isolation. For example, in Tanner's case, his inexperience in practice does not excuse or explain his actions. All citizens, lawyers or otherwise, should know that the law forbids forging and back-dating documents. Thus, greater experience in practice would not have taught Tanner anything he did not already know with regard to his misconduct. Moreover, Tanner had received a warning concerning the proper use

---

1. Because Tanner's behavior warrants the sanction of disbarment prior to consideration of aggravating and mitigating factors and because a selfish motive is an element of Rule 4.2(a), we do not give selfish motive additional weight as an aggravating factor. *See In re Ince*, 340 Utah Adv. Rep 53, 56, 957 P.2d 1233, 1238 (Utah 1998).

of a notary only a year before this incident. His inexperience as an attorney does not excuse his "short memory" about the notary public rules. Therefore, in this case, inexperience does not constitute a mitigating factor.

Further, one's general character and reputation should only mitigate when the facts of a case leave the court with questions as to bad faith or intent. Where, as here, the attorney in question admits to flagrantly illegal acts and provides no valid explanation for these acts, the fact that he has managed to conceal his weak character from the public should not weigh in his favor.

Finally, Tanner's remorse at trial is irrelevant. Naturally, anyone going through a trial for the above wrongdoing would feel remorse after getting caught. Instead, the remorse question closely relates to acknowledgment of wrongful conduct: did Tanner feel remorse about his behavior *before* getting caught, and was he motivated by remorse in making amends? *See In re Ince,* 340 Utah Adv. Rep. at 56, 957 P.2d at 1238. The district court's ruling that Tanner failed to acknowledge the wrongful nature of his conduct makes clear that Tanner was unmotivated by remorse until after discovery.

In addition to the aforementioned factors, the trial court appears to have relied on the lack of a pattern of misconduct on Tanner's part, and the severe public censure Tanner suffered as a result of his felony conviction, to conclude that suspension rather than disbarment was the appropriate sanction. However, as set forth above, Tanner had a history of similar misconduct. Furthermore, public reaction against Tanner's behavior is not a factor that mitigates against disbarment. In order for the disciplinary rules to achieve their goal of uniform application, district courts must strictly adhere to the analytical framework set forth in the rules. The presumptive sanction for Tanner's misconduct is disbarment. No factors mitigate Tanner's bad acts, and multiple factors aggravate them. Hence, Tanner should receive the most severe sanction appropriate to his misdeeds: disbarment.

## IV. Conclusion

We reverse the trial court and hold that Tanner's misconduct warrants disbarment.

HOWE, C.J., and STEWART, ZIMMERMAN and RUSSON, JJ., concur in Associate Chief Justice DURHAM's opinion.