1999 UT 15

**In the Matter of the DISCIPLINE OF Byron L. STUBBS, Bar No. 3145.**

**No. 970439.**

Supreme Court of Utah.

Feb. 19, 1999.

Kate A. Toomey, Salt Lake City, for Utah State Bar.

Kendall S. Peterson, Salt Lake City, for Appellee.

DURHAM, Associate Chief Justice:

¶1 The Utah State Bar (the Bar) appeals from a district court order suspending Byron Stubbs from the practice of law for three years. The Bar contends that the district court erred in deviating from the presumptive level of discipline and that it should have ordered disbarment. Stubbs cross-appeals, asserting that the district court erred by imposing too severe a sanction against him and requesting a reduction in the term of his suspension.

¶2 On July 26, 1996, Stubbs pled guilty to one count of communications fraud, a class A misdemeanor, in violation of Utah Code Ann. § 76–10–1801. The guilty plea was based on Stubbs' participation in a scheme to defraud the State through the preparation of a letter on behalf of his client, Tool Design, Engineering and Manufacturing (Tool Design). The letter Stubbs prepared contained false representations regarding the status of environmental remediation efforts on a piece of property Tool Design owned. Stubbs knew the statements contained in the letter were false and he knew his client intended to send the letter to the State to facilitate the scheme to defraud.

¶3 In June 1988, the State issued a notice of violation to Tool Design based on dangerously high levels of lead and chrome found in a ditch on Tool Design property.

Stubbs represented Tool Design at the time the State issued the notice. Shortly thereafter, Tool Design replaced Stubbs with other counsel. On March 6, 1989, the State and Tool Design, with the assistance of its new counsel, entered into a consent decree whereby Tool Design promised to remediate the contamination. Soon after the entry of the consent decree, Stubbs resumed his role as Tool Design's counsel. Although he had not participated in the negotiations leading to the consent decree, Stubbs was aware of its terms.

¶4 In October 1989, the State approved a site remediation plan submitted by EarthFax Engineering, Inc., on Tool Design's behalf. Tool Design failed to implement the plan due to financial difficulties. In October 1990, Tool Design submitted a modified plan for remediating the contaminated ditch in which Wasatch Environmental, Inc. (Wasatch), would conduct the remediation efforts. The State gave its approval to the initial stages of the modified plan, which included soil sampling and testing. In April 1991, Wasatch began sampling and testing the contaminated soil, but discontinued the testing because Tool Design failed to pay for the work.

¶5 On December 16, 1991, the State issued an order to show cause regarding Tool Design's failure to comply with the remediation requirements. Stubbs suggested that Tool Design contract with Don Hall to perform site preparation work so that Wasatch could continue its testing. On December 28, 1991, Hall and another worker removed a substantial amount of contaminated soil from Tool Design property and took it to the city dump. Although it is unclear who gave Hall the order to remove the soil, such action specifically violated the consent decree. Later, that day, Stubbs visited the ditch and told Hall to stop removing the soil.

¶6 Stubbs claims that it was not until shortly after the December 28 removal of the contaminated soil that he realized the removal violated the consent decree. On January 7, 1992, at a meeting arranged by Stubbs, Stubbs met with State representatives to discuss Tool Design's failure to comply with the site remediation plan. Stubbs urged Tool Design president Herb Strehl to attend the meeting, but Strehl refused and ordered Stubbs not to disclose the wrongful removal of the contaminated soil. [id] At the meeting, Stubbs represented that Wasatch had completed three-fourths of the sampling and that the remainder would be completed by the end of summer. Stubbs did not disclose the removal of the contaminated soil.

¶7 On November 1, 1996, Stubbs submitted a letter to the Bar attempting to explain his criminal conduct. In that letter, Stubbs lied, claiming that at the January 7, 1992 meeting he had informed the State that contaminated soil had been removed from Tool Design property.

¶8 On March 13, 1992, Stubbs met with Wasatch representatives Les Pennington and John Rabideau. At that meeting, Stubbs paid Wasatch for work performed and proceeded to misrepresent the facts surrounding the removal of the contaminated soil. Stubbs lied to Pennington and Rabideau, claiming that Strehl had removed some soil over the weekend and that he (Stubbs) did not know where the soil was taken. In fact, Stubbs knew how much soil had been removed, where it was taken, and that the soil had been moved by Hall more than two months earlier.

¶9 On March 13, 1992, after the meeting with Wasatch, Stubbs met with Strehl, Hall, and Tool Design employee James Robertson at the Tool Design ditch. Stubbs stated that "we've got our titty in a bit of a twister." Stubbs went on to explain that they needed to put some dirt back into the ditch and they were unable to recover the dirt that had already been removed. Stubbs suggested that they get clean dirt to replace that which was removed, place a pump in the chrome rinse tank, and then contaminate the new soil. On March 14, 1992, believing the conduct suggested by Stubbs was illegal, Robertson contacted the State and disclosed the substance of the March 13 meeting. Robertson's disclosure triggered an investigation by the Attorney General's Office.

¶10 On March 19, 1992, Stubbs spoke with Robertson regarding the replacement and contamination of the new soil. Robertson informed Stubbs that he would not par-

ticipate in the plan. Robertson reiterated his refusal to Strehl. Shortly thereafter, Stubbs informed Robertson that Strehl had abandoned the plan to contaminate the new soil because they had been able to get some of the old dirt back.

¶ 11  In his November letter to the Bar, Stubbs admitted that he watched the replacement of dirt in the ditch in March of 1992. At trial in this matter, Stubbs directly contradicted the admission made in that letter.

¶ 12  In March 1992, Stubbs discovered that Strehl intended to camouflage the ditch by placing additional debris in it to create the illusion that the ditch was in its original condition. Instead of discouraging Strehl from carrying out this illegal plan, Stubbs aided Strehl by tossing debris into the ditch. Stubbs' acts were surreptitiously videotaped by the Attorney General's investigator. Stubbs contended at trial that he tossed debris into the ditch "facetiously," to make fun of his client. The trial court rejected Stubbs' explanation.

¶ 13  On March 30, 1992, Stubbs and Strehl again met with Wasatch. At that meeting, Strehl lied to Wasatch by stating that all the dirt removed from the ditch had been put back. Strehl also stated that any change in the volume of soil was due to the removal of debris. Stubbs made no effort to rectify Strehl's representations even though he knew they were false and that Wasatch would rely on those representations. Later that day, Wasatch representatives Rabideau and Pennington visited the Tool Design ditch. Rabideau observed a significant change in the size and shape of the ditch and determined that it needed to be re-surveyed.

¶ 14  On April 9, 1992, Stubbs, Pennington, and Rabideau met with State representatives. Strehl did not attend the meeting but had agreed that Stubbs should reveal that Strehl had disturbed the contaminated soil. At the meeting, Stubbs conceded that Strehl had removed some soil and debris from the ditch. One of the state officials asked Stubbs if any dirt had been taken off-site. Stubbs lied and said "no." At the conclusion of the meeting, the State requested that Tool Design provide it with a letter explaining all activities related to disturbing the ditch.

¶ 15  In accordance with the State's request, Stubbs helped Strehl prepare a letter describing the activities connected to the ditch. At Strehl's insistence, Stubbs included the following information that he knew was false and would be relied upon by the State: (1) statements regarding the type and amount of debris removed from the ditch; (2) claims that all the soil removed from the ditch was returned; (3) a statement that none of the contaminated soil was removed from the site; (4) an assertion that some of the soil removed from the ditch was used as fill to construct a bridge across the ditch; and (5) a statement that changes in the ditch's appearance were due to the removal of debris. Strehl testified at trial that Stubbs never objected to the inclusion of any of those misrepresentations. Furthermore, Stubbs' services were used to prepare the letter. He billed Tool Design for its preparation. Stubbs knew that Tool Design intended to use the letter in furtherance of a fraud against the State and he knew the State would rely on the representations contained therein. Finally, Stubbs never attempted to correct the misrepresentations made by his client to the State. Stubbs testified that whether the State had received the letter did not concern him, because the letter contained false statements made by the client and not by Stubbs, and because the letter was signed only by Strehl; thus, Stubbs believed he was relieved of any responsibility for the fraud the letter was intended to accomplish.

¶ 16  In addition to the misrepresentations made to the State, Stubbs lied to the Bar during its investigation of his criminal conduct and to the trial court during his disciplinary hearing. Stubbs made the following misrepresentations to the Bar and to the court: (1) he claimed there was only one copy of the offending letter; (2) he said he did not see Strehl sign the letter; (3) he asserted that he told Strehl not to send the disclosure letter to the State; (4) he claimed that he was unaware that Strehl had sent the letter until the criminal investigation commenced; and (5) he stated that he never saw a signed copy of the disclosure letter.

¶17 In light of the foregoing, the district court concluded that Stubbs made false statements of material fact in violation of rule 4.1(a) of the Rules of Professional Conduct, aided his client in committing a fraudulent act against the State in violation of rules 4.1(b) and 1.6(b)(1), made false statements of fact to representatives of Wasatch in violation of rule 4.1(a), and failed to rectify the consequences of Strehl's criminal act, the commission of which relied on Stubbs' services.

¶18 Consequently, the court held that disbarment was the presumptively appropriate sanction for Stubbs' misconduct. The trial court then concluded that the mitigating circumstances outweighed the aggravating circumstances and, therefore, reduced the level of discipline to three years' suspension.

¶19 Given the unique nature of attorney discipline proceedings, we may draw our own inferences from the trial court's factual determinations, which we review under a clearly erroneous standard. *See In re Tanner*, 960 P.2d 399, 401 (Utah 1998). "Furthermore, if the evidence warrants, 'we may make an independent judgment regarding the appropriate level of discipline.'" *Id.* (quoting *In re Babilis*, 951 P.2d 207, 213 (Utah 1997)).

¶20 Based on the foregoing facts, the trial court held that Stubbs' conviction for communications fraud and his numerous misrepresentations to the court, the Bar, the State and others made Stubbs eligible for disbarment. *See* Standards for Imposing Lawyer Sanctions R. 4.2. The court then referred to the following factors in mitigation of Stubbs' misconduct: (1) lack of a prior record of discipline; (2) absence of a selfish motive; (3) inexperience in the practice of criminal or environmental law; (4) good character; (5) imposition of other penalties; (6) remorse; and (7) lack of a pattern of misconduct. We have stated that proper departure by a trial court from the presumptive level of discipline set forth in the standards requires the mitigating factors to be "significant." *In re Ince*, 957 P.2d 1233, 1238 (Utah 1998). The trial court must also have considered the mitigating factors in light of the particular misconduct.

¶21 Several of the factors relied upon by the trial court in this case do not, in fact, mitigate against disbarment. First, Stubbs' inexperience in the practice of criminal and environmental law is not an appropriate mitigating factor. As in *Tanner*, "his inexperience in practice does not excuse or explain his misconduct." 960 P.2d at 402. Stubbs lied to the trial court, lied to the Bar, and allowed his services to be used to perpetrate a fraud against the State. Greater experience in the practice of criminal or environmental law would not have taught Stubbs anything more about honesty that he should not know after thirty-five years of practice. Indeed, the trial court concluded that Stubbs' substantial experience in the practice of law aggravated his misconduct. Consequently, Stubbs' inexperience in the practice of criminal and environmental law does not mitigate against disbarment.

¶22 As to Stubbs' remorse at trial, *Tanner* illustrates that "remorse at trial is irrelevant." 960 P.2d at 403. Instead, as stated in *Tanner*, remorse must generally be linked to the acknowledgment of wrongful conduct and motivation to make amends *prior* to being caught. *See id.* The trial court, in this case, specifically found that Stubbs refused to acknowledge that his conduct was wrong and persistently blamed his client for the misdeeds. Stubbs' lack of remorse is also illustrated by his significant misrepresentations to the Bar during its investigation Thus, remorse is not a factor which mitigates against disbarment in this case.

¶23 Further, with respect to Stubbs' good character, "character and reputation should only mitigate when the facts of the case leave the court with questions as to bad faith or intent.... [T]he fact that he has managed to conceal his weak character from the public should not weigh in his favor." *See id.* In this case, Stubbs pled guilty to communications fraud for his part in a scheme to defraud the State. In his plea agreement, Stubbs admits that he knew the letter he prepared for Strehl contained false statements and material omissions and that Strehl intended to send the letter to the Utah Department of Environmental Quality.

Stubbs' bad faith and intent are not disputed issues in this case, and Stubbs' reputation for good character cannot mitigate against disbarment.

■ ¶ 24 The trial court also concluded that the incidents in question do not represent a pattern of misconduct but rather an isolated incident. We disagree. The trial court's own findings illustrate that Stubbs engaged in a significant series of misrepresentations. First, Stubbs lied to Wasatch representatives about the removal of dirt from the ditch, then participated in a scheme to cover-up the removal by bringing in clean dirt and contaminating it. Next, Stubbs prepared the letter for his client that resulted in Stubbs' conviction for communications fraud. Then, during the Bar's investigation, Stubbs lied to the Bar. The findings of the trial court indicate that the court concluded that Stubbs also lied during his trial. We believe the above establishes a pattern of dishonesty, not merely an isolated incident.

¶ 25 We are left with the following valid mitigating factors: Stubbs' lack of a prior record of discipline; the absence of a selfish motive; and the imposition of other penalties in the form of a $4,625 fine and 200 hours of community service. As previously stated, in order for the mitigating factors to persuade us that the presumptive level of discipline is inappropriate, they must be significant. *Ince*, 957 P.2d at 1238. We find that in this case they are not, especially when considered in light of the aggravating factors found by the trial court.

■ ¶ 26 We noted above that the trial court found as aggravating factors the nature of Stubbs' illegal conduct, his extensive experience practicing law, his refusal to recognize the wrongful nature of his conduct, and his lack of a good faith effort to rectify the consequences of his misconduct. In addition, the trial court also emphasized Stubbs' submission of false statements to the Bar during the disciplinary investigation as an aggravating factor. The court also highlighted Stubbs' dishonest motive:

> In addition to preparing the disclosure letter, [Stubbs] participated with his client in a cover-up scheme which involved hauling in different soil and placing it in the ditch. Although not carried out, it was contemplated that the different soil would be contaminated with a chrome rinse. Finally, [Stubbs] also participated in the cover-up scheme by tossing debris in the ditch in an attempt to return the ditch to its original condition. Each of the foregoing acts demonstrate a dishonest motive by [Stubbs] which the Court concludes is an aggravating circumstance.

Finally, the district court noted that the fraud perpetrated by Stubbs "caused potentially serious injury to the public when it delayed the proper treatment and disposal of the contaminated soil removed from the ditch, thus creating a health hazard for both children and the general public."

¶ 27 In sum, we find that the mitigating factors in this case are not so significant as to outweigh the aggravating factors; thus, Stubbs should receive the presumptively appropriate sanction of disbarment.

■ ¶ 28 As a final matter, we note that the Bar also appeals from the district court's ruling that Stubbs was entitled to an evidentiary hearing before the imposition of an interim suspension under rule 19 of the Rules of Lawyer Discipline and Disability. However, the Bar stipulated below that the rule 19 evidentiary hearing would be conducted concurrently with Stubbs' trial. Accordingly, that issue has not been preserved for our review. *See State v. Lairby*, 699 P.2d 1187, 1193 (Utah 1984) (procedures stipulated to below are not proper subject for appeal).

■ ¶ 29 Similarly, Stubbs asserts that the district court erred by not holding a separate sanctions hearing under rule 11(f) of the Rules of Lawyer Discipline and Disability. Stubbs never requested a separate sanctions hearing and the record reflects that both parties understood that all evidence in aggravation and mitigation would be introduced at trial and that no separate hearing would occur. Consequently, Stubbs failed to preserve that issue for appellate review. *See State v. Labrum*, 925 P.2d 937, 939 (Utah 1996) (stating that generally issues not preserved in the trial court are deemed waived).

¶ 30 This court therefore orders Stubbs' disbarment.

Chief Justice HOWE, Justice ZIMMERMAN, and Justice RUSSON concur in Associate Chief Justice DURHAM's opinion.

STEWART, Justice dissenting:

¶ 31 I would affirm the district court order suspending Byron L. Stubbs from the practice of law for three years. In my view, the district court is in a better position to evaluate mitigating circumstances than is this court.