2001 UT 110

**In the Matter of the DISCIPLINE OF Jamis M. JOHNSON, No. 3937.**

**No. 990806.**

Supreme Court of Utah.

Dec. 18, 2001.

Rehearing Denied April 25, 2002.

Durham, J., filed opinion concurring in part and dissenting in part;

Wilkins, J., filed opinion concurring in part and dissenting in part.

Stewart M. Hanson, Jr., Cameron S. Denning, Salt Lake City, for Johnson.

Kate A. Toomey, Salt Lake City, for the Utah State Bar.

HOWE, Chief Justice:

## INTRODUCTION

¶ 1 Attorney Jamis Johnson was disbarred from the practice of law for intentionally misappropriating client funds, a violation of the Utah Rules of Professional Conduct. The trial court stayed the judgment pending any appeal. The Utah State Bar, through its Office of Professional Conduct (OPC), appeals from the order staying the judgment. Johnson cross-appeals from the judgment of disbarment.

## BACKGROUND

¶ 2 In connection with his representation of a client, Johnson settled a case for $50,000. He deposited that money in a trust account as required by rule 1.15 of the Utah Rules of Professional Conduct, and tendered a check in the amount of $28,800 to his client as its share of the settlement. Upon receiving the check, the client told Johnson it was going to return it to him because he did not have authority to settle for $50,000 without the client's consent. In a letter to his client dated January 19, 1993, Johnson responded:

> In our last conversation, you claimed to have returned the trust account check I sent you. I have not received that check. I have therefore stopped payment on that check.
>
> If you want me to issue another check I will, but I will await your instructions in that regard.
>
> *In the meantime, I will hold the funds in trust.* If I am compelled to take any further action on the matter, you will be billed at the previously discussed rate of $150.00 and I will, as the bill accrues, draw down such legal fees out of the amount of the trust account.

(Emphasis added.) In a letter dated January 26, 1993, Johnson's client responded:

> I inadvertently failed to return the Trust Account check. Please find it enclosed herewith.
>
> In response to your January 19, 1993 letter *you may do as you wish with the funds,* but you should be aware that you have not responded to our last conversation in which I suggested that we pursue arbitration or mediation. I am, therefore, proceeding formally against you under the laws of the State of Utah....
>
> ... [D]o not work on this matter or any other matter related to [this client] or any of its subsidiaries.

(Emphasis added.) The client then filed an informal complaint with the OPC alleging that Johnson had settled the case without authority; the complaint was later dismissed. Approximately fifteen months later, the client demanded payment of the $28,800 by letter dated April 15, 1994. When Johnson had not returned the funds by February 16, 1995, the client again sent a letter demanding payment within ten days. When the client did not receive payment, it made a second informal complaint to the OPC, alleging misuse of a client's funds. The OPC subsequently filed a formal complaint against Johnson on May 20, 1997, charging that he violated rule 1.15 of the Utah Rules of Professional Conduct by misappropriating $28,800 of client money. The Bar moved for summary judgment, which the trial court granted. Following a sanctions hearing, the court disbarred Johnson for misappropriation of client funds based on the following findings of undisputed fact:

> Johnson held the client's $28,800 in a trust account.
>
> Mr. Johnson attempted to deliver the $28,800 to the client and those funds were returned to Mr. Johnson.... Mr. Johnson placed the client's $28,800 in trust and agreed to hold the client funds in trust pending a resolution of their differences. Thereafter the client requested the return of the funds, but Mr. Johnson did not return the $28,800.
>
> Mr. Johnson converted the $28,800 for his own use.
>
> Mr. Johnson offered no satisfactory explanation of why he kept the $28,800. His explanation of expenses for the threatened malpractice action by the client against Mr. Johnson is not a satisfactory explanation.

Johnson was granted a stay of the judgment of disbarment pending any appeal.

## STANDARD OF REVIEW

¶ 3 This court is charged with governing the conduct and discipline of those admitted to practice law in this state. Thus in reviewing attorney discipline cases, "while we review the trial court's finding of facts under the clearly erroneous standard, we reserve the right to draw different inferences from the facts than those drawn by the trial court." *In re Discipline of Ince,* 957 P.2d 1233, 1236 (Utah 1998) (citation omitted); *see also In re Discipline of Babilis,* 951 P.2d 207, 213 (Utah 1997). In addition, "our constitu-

tional responsibility requires us to make an independent determination as to the [correctness of the discipline actually imposed]." *Ince*, 957 P.2d at 1236.

## ANALYSIS

¶ 4 We address first whether the trial court's sanction of disbarment was appropriate and then turn to the issue of whether Johnson was properly granted a stay pending this appeal.

## I. DISBARMENT SANCTION

¶ 5 Attorney discipline sanctions are governed by the Standards for Imposing Lawyer Sanctions, chapter 15 of the Supreme Court Rules of Professional Practice. These standards state that the purpose of sanctioning an attorney is

> to ensure and maintain the high standard of professional conduct required of those who undertake the discharge of professional responsibilities as lawyers, and to protect the public and the administration of justice from lawyers who have demonstrated by their conduct that they are unable or likely to be unable to discharge properly their professional responsibilities.

Standards for Imposing Lawyer Sanctions rule 1.1. Rule 3 of those standards provides that after misconduct has been found, the factors to be considered in imposing a sanction include "(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors."

¶ 6 These rules additionally provide that an order disbarring an attorney is generally appropriate absent mitigating or aggravating circumstances when he or she

> (a) knowingly engages in professional misconduct as defined in Rule 8.4(a), (d), (e), or (f) of the Rules of Professional Conduct with the intent to benefit the lawyer or another or to deceive the court, and causes serious or potentially serious injury to a party, the public, or the legal system, or

causes serious or potentially serious interference with a legal proceeding; or

> (b) engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation . . . or an attempt or conspiracy or solicitation of another to commit any of these offenses; or
>
> (c) engages in any other intentional misconduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice law.

Standards for Imposing Lawyer Sanctions rule 4.2.[1]

¶ 7 Subsection (a) above directs us to rule 8.4 of the Utah Rules of Professional Conduct for definitions of professional misconduct sufficient to trigger the sanction of disbarment. The first subsection of rule 8.4 provides that it is professional misconduct for an attorney to "[v]iolate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another." Utah R. Prof'l Conduct 8.4(a).

¶ 8 The trial court held that Mr. "Johnson violated rule 1.15(a), (b), and (c) . . . of the Rules of Professional Conduct when he intentionally misappropriated [his client's] funds for his personal or business use." After determining that Johnson had violated the Utah Rules of Professional Conduct, the trial court correctly weighed mitigating and aggravating factors and determined that, although Johnson's conduct was not as egregious as that of other attorneys who have been disbarred by this court in recent years, disbarment was the appropriate remedy under our case law because there were no substantial mitigating circumstances. We agree.

¶ 9 We held in *Babilis* that intentional misappropriation of a client's funds will result in disbarment absent "truly compelling mitigating circumstances." 951 P.2d 207, 217

---

1. Rule 6 of the Standards for Imposing Lawyer Sanctions allows a departure from the presumptive sanction based on mitigating or aggravating circumstances to provide for the flexibility in discipline required by rule 1.3 of the Standards for Imposing Lawyer Sanctions.

(Utah 1997). We see no reason to deviate from this rule. The rule takes into consideration the factors listed in rule 3, including the duty violated, the lawyer's mental state, the potential or actual injury caused, and the existence of aggravating or mitigating circumstances. As we stated in *Babilis*, "[i]ntentional misappropriation of a client's funds is always indefensible; it strikes at the very foundation of the trust and honesty that are indispensable to the functioning of the attorney-client relationship and, indeed, to the functioning of the legal profession itself." *Id.* We will not abide such conduct.

¶ 10 Johnson does not dispute the fact that he did not return the $28,800 to his client upon demand. The trial court found that he made no satisfactory explanation for this failure. The court weighed the mitigating factors presented by Johnson and determined that they were not sufficient to warrant a lesser sanction. He contends that he "has maintained a practice for many years, which includes significant pro bono work, involvement in community organizations, and a good reputation among his fellows" and that he "is not the type of individual committing the type of acts" requiring disbarment. Although a good reputation and community service are commendable, they do not constitute "truly compelling mitigating circumstances" when there has been a misappropriation of client's funds. *Id.* at 217.

¶ 11 In addition, Johnson contends that the entire circumstances surrounding the misappropriation is a mitigating circumstance. Although he does not dispute that he used the $28,800 for personal or business purposes, he asserts that there is a question of fact about whether the client was even entitled to that money. He argues that when the client, after rejecting his tender of the money, terminated the attorney-client relationship and told him to do with the money what he would, his own obligation to keep the money in trust ended. He argues further that his client owed him money from other transactions including fees for protecting his interest in this case, and thus he was entitled to a portion of the $28,800 he initially tendered. We disagree.

¶ 12 The Rules of Professional Conduct require that in the case of a dispute over funds, the attorney is to maintain those funds in a separate trust account until the dispute is resolved. Utah R. Prof'l Conduct 1.15(c). Johnson tendered $28,800 as the client's portion of the settlement funds. Pending resolution of the dispute with his client over ownership of those funds, he was required to maintain them in a separate trust account.[2] Neither of the factors he presents as mitigating the presumptive sanction of disbarment is "truly compelling," and we therefore affirm the trial court's order.[3]

¶ 13 Johnson also contends that "[a]bsent a finding by the trial court of 'serious criminal conduct'" his case does not meet the requirements for presumptive disbarment in rule 4.2. We reject that argument here as we did in *Babilis*. First, disbarment is appropriate when an attorney's conduct falls within any one of the three subsections of rule 4.2. The trial court's finding that Johnson knowingly violated rule 1.15 of the Utah Rules of Professional Conduct for his own benefit was sufficient to support his disbarment. As we earlier stated, this conduct seriously injures, at the very least, the public and the legal system. Second, the intentional misappropriation of client funds falls within the description of "other intentional misconduct involving dishonesty, fraud, deceit, or misrepresentation" referred to in subsection (c) of rule 4.2.[4]

2. Even Johnson asserts that he was entitled only to "an offset to *some portion* of the $28,800," not the entire amount. He knew his client did not mean to give him a gift of the money.

3. Once an attorney's conduct has been found to fall within rule 4.2 of the Standards for Imposing Lawyer Sanctions, the presumptive sanction is disbarment. There is no additional burden to show aggravating circumstances; the absence of aggravating factors is not a mitigating factor.

4. Johnson also asserts that disbarment is too harsh for his conduct because it "did not [even approach] the dishonest, egregious conduct" of Babilis. He argues instead that his situation is more akin to that of *In re Cassity*, the case of an attorney who was put on probation after receiving a public reprimand for failing to remit to his client her rightful portion of settlement proceeds. *See In re Complaint of Cassity*, 875 P.2d 548 (Utah 1994). *Cassity* was decided before we

¶ 14 We do not administer the sanction of disbarment lightly; we understand its devastating effects on an attorney. However, we are charged with protecting the public and the legal system of our state from those attorneys who do not abide by their professional responsibilities, and we cannot tolerate the intentional misappropriation of a client's funds. Thus we affirm the disbarment.

## II. STAY PENDING APPEAL

¶ 15 In appealing from the order granting Johnson's motion for a stay pending his appeal to this court, the OPC seeks "guidance on the important issue of the availability for stays of judgment in cases in which the district court has determined that the attorney's misconduct is so serious that it warrants disbarment." Our resolution of this issue today cannot affect the parties in this action and is therefore moot. We generally refrain from deciding moot questions because of our policy against issuing advisory opinions. *In re Giles*, 657 P.2d 285, 286 (Utah 1982). However, this case warrants an exception to this policy because the issue is one of wide public concern, and because of the short period any one litigant is affected by it, the issue is " 'capable of repetition yet evading review.' " *Id.; see also KUTV v. Conder*, 668 P.2d 513, 516 (Utah 1983); *Wickham v. Fisher*, 629 P.2d 896, 899–900 (Utah 1981).

¶ 16 The standard a trial court must follow in granting an attorney's motion for stay of a judgment of sanction pending appeal of that judgment is a question of first impression in this court. We look to the rules governing attorney discipline proceedings to resolve it. Rule 17 of the Rules of Lawyer Discipline and Disability provides that unless otherwise noted, "the Utah Rules of Civil Procedure, [and] the Utah Rules of Appellate Procedure governing civil appeals . . . apply in formal discipline actions." Utah R. Civ. P. 17. Rule 8 of the Utah Rules of Appellate Procedure provides that a stay of a judgment or order of a district court pending appeal must generally be sought in the district court. Utah R. Civ. P. 8. Rule 62 of the Utah Rules of Civil Procedure provides that a trial court can grant a motion for stay pending appeal "in its discretion and on such conditions for the security of the adverse party as are proper." Utah R. Civ. P. 62(a).

¶ 17 Pursuant to our constitutional charge to "govern the practice of law, including admission to practice law and the conduct and discipline of persons admitted to practice law," Utah Const. art. VIII, § 4, we enunciate a standard to guide the discretion of the district court in determining whether to stay a judgment of sanction pending appeal of that judgment to this court. Rule 18(a) of the Rules of Lawyer Discipline and Disability provides that a district court can grant a motion for interim suspension when an attorney "poses a substantial threat of irreparable harm to the public" pending final disposition of a disciplinary proceeding. Although we recognize that an order of interim suspension is different from a final judgment of sanction in that the latter is based on a final determination of misconduct following a trial, the standard fits well in both situations and we adopt a modified version of it here. When an attorney can meet the burden of demonstrating to the trial court's satisfaction that his or her continued practice of law pending appeal does not pose a substantial threat of irreparable harm to the public, the trial court may, in its discretion, grant the stay. Under this standard, cases where the attorney's misconduct was a one-time incident as opposed to a pattern of misconduct over a period of time will probably be the most likely instances where a stay would be appropriate. We do not require, however, that the attorney also demonstrate that he or she has issues which are likely to result in reversal on appeal as we do in criminal cases where a convicted criminal defendant seeks a stay pending appeal. *See* Utah R.Crim. P. 27(d)(2). The discipline of an attorney is a civil case and the ultimate power to discipline is vested in this court under the Utah Constitution. The district courts in hearing the discipline cases act only as our agent. Because the private practice of law cannot easily be stopped and started again, unless there is a substantial threat of irreparable harm to the public, a disbarred lawyer should be entitled to a stay

enunciated a firm rule in *Babilis* and may well

have been decided differently today.

of judgment pending appeal to this court where the final authority for discipline rests.

¶ 18 The trial court found that "the likelihood of harm to the public should Johnson be allowed to practice law during the pendency of this appeal is slim." We agree. Johnson's conduct warranting disbarment was a serious one-time offense and not a continuing pattern of misconduct that was likely to recur while he was allowed to continue to practice pending his appeal to this court.

¶ 19 The judgment of disbarment is affirmed. The trial court did not err in granting Johnson's motion for a stay pending his appeal to this court.

¶ 20 Associate Chief Justice RUSSON and Justice DURRANT concur in Chief Justice HOWE's opinion.

DURHAM, Justice, concurring and dissenting:

¶ 21 I concur in Part I of the majority opinion, but cannot join Part II. This court is charged by the Utah Constitution with the obligation to regulate the practice of law. We have delegated the screening, fact-finding, and initial judgment regarding discipline to the Utah State Bar and to the district courts, but we retain the final authority to oversee the system. When the prosecuting entity and the disciplined attorney accede to the appropriateness of the disciplinary sanction imposed by the trial courts, or at least fail to challenge it, we lend our constitutional authority to the finality of the determination. Such trial court decisions, of course, create no precedent for the disposition of other cases. Where a sanction is challenged, however, this court undertakes a function that goes beyond the review of an individual case. We arbitrate questions of proportionality, rules of law, and guidelines for the imposition of sanctions that have general application for the practice of law in Utah. Our decisions interpret the Rules of Professional Conduct and develop the principles of application that will guide lawyers, the Bar, and the trial courts.

¶ 22 Given the significance of our institutional role in the process of imposing sanctions, I am troubled by the procedural analysis of my colleagues. Disbarment is the "ultimate" sanction in the context of disciplinary proceedings. Once it is effected, there is, in a professional sense, no turning back. A disbarred lawyer must instantly close his practice, dismiss his clients, and remove himself from all litigation and transactions in which he has been engaged as a lawyer. There is little likelihood that a practice could be restored or regenerated if this court were to reverse the sanction after appeal, particularly given the many months required to resolve such appeals.

¶ 23 Trial courts have a more limited perspective on the disciplinary system than does this court. A trial judge is often called on to "predict" the answer to a question of first impression involving the rules and the scope of appropriate sanctions. It is not at all unexpected that a trial judge's best assessment of the trend of developing law turns out to be "wrong" in the sense that this court will reject it and opt for a different interpretation or policy. Where the judgment is equivalent to a professional death penalty, I believe that this court's review should precede execution.

¶ 24 This case presents a useful example. The facts ultimately support the sanction of disbarment, but it is in my view a very close question. An otherwise upright and commendable lawyer has committed one enormous error of judgment and behavior, for which he is to experience the complete loss of his career and reputation. It has been a very difficult decision for at least this member of the court to disbar. Simultaneously, this lawyer's misconduct, although meriting disbarment, constituted no interim danger to the public whatsoever during the pendency of the appeal. Had this court disagreed with the trial judge on the sanction, and had there been no stay of execution, a career might have been dismantled unnecessarily. I therefore take a view different from any of those supported by my colleagues. I believe that where disbarment is ordered by the trial judge and an appeal is taken, there should be an *automatic* stay *unless* there has been a showing sufficient to support an interim suspension under rule 18(a), either in the trial court proceedings themselves or on motion by the Bar. I don't want to overdo the analo-

gy to the death penalty in criminal cases, but I believe that the constitutional underpinnings and institutional structure of our disciplinary system require this court's review and approval before a career is terminated.

WILKINS, Justice, concurring and dissenting:

¶ 25 I concur in part I of Chief Justice Howe's opinion. I respectfully dissent to part II. The trial court should not have stayed the judgment.

¶ 26 I agree that once a judgment of disbarment is entered by the trial court, the burden should be on the lawyer to seek, and establish adequate grounds for, a stay of the disbarment pending review by this court. The obligation is on the lawyer to prove the entitlement to a stay by demonstrating to the trial court that the lawyer does not pose a substantial threat of irreparable harm to the public during the course of the review. Moreover, even making such a motion and showing should not *entitle* the disbarred lawyer to a stay of the disbarment pending review. Quite the contrary, the trial judge, acting as our agent in this type of proceeding, has broad discretion in deciding whether or not a stay is appropriate. In my opinion, we are unwise to create a presumption in favor of granting a stay. It would be better to require the disbarred lawyer to convince the trial court, or us, that he or she has a substantial likelihood of success on review by this court before granting a stay.

¶ 27 At risk here is not only the livelihood of the lawyer, but the confidence of the public in the court's ability to police the ranks of those admitted to practice law. An interim suspension should be imposed when needed to protect the public. A disbarment should be effective when entered by the trial court, under all but the most unusual circumstances. Only when the lawyer can demonstrate that the disbarment is likely to be reversed on review by this court should the public be required to suffer continued exposure to the disbarred lawyer. Our duty to protect the public is higher than any duty to the disbarred lawyer, once the lawyer has been accorded a full measure of due process and evenhanded justice by the trial court.

Only when the quality of that justice is in real doubt should a stay be granted.