2001 UT 111

**In the Matter of the DISCIPLINE OF Peter M. ENNENGA, No. 0999.**

**No. 20000476.**

Supreme Court of Utah.

Dec. 18, 2001.

Brian R. Florence, Ogden, for Ennenga.

Kate A. Toomey, Salt Lake City, for the Utah State Bar.

HOWE, Chief Justice.

## INTRODUCTION

¶ 1 The Office of Professional Conduct (OPC) of the Utah State Bar appeals from a judgment of the district court suspending attorney Peter M. Ennega from the practice of law for six months and placing him on probation for three years for violating rules 1.4, 1.15, 8.1, 8.1(b), 8.4(b), and 8.4(c) of the Utah Rules of Professional Conduct. Ennenga cross-appeals, asserting that the trial court's sanction order was erroneous because it violated the constitutional prohibition against the application of ex post facto laws in the context of criminal punishments.

## BACKGROUND

¶ 2 Ennenga was licensed to practice law in Utah in 1970. The OPC filed a complaint for disciplinary action against him based on the allegations in the informal complaints to the OPC of four of Ennenga's clients: JoAnn Wilson, Taner Yarbil, Rodney Glover, and Alice Durrant–Funk. The trial court made the following findings on each matter.

¶ 3 In 1991, Ennenga was retained by JoAnn Wilson to collect $18,000 owed to her business; he collected the money in May 1992. Days after, Wilson requested that Ennega hold the money for her in an interest bearing escrow account. Instead of doing so, Ennenga deposited a portion of the money in his personal checking account in October 1992 and retained the rest of it in the form of a cashier's check. He then spent the entire amount of his client's money on personal expenses. Wilson's accountant requested an accounting of the $18,000 in April 1993, but Ennenga did not comply. Wilson's subsequent attempts to communicate with Ennenga regarding the money were answered with unfulfilled promises to pay and other evasive tactics.

¶ 4 Taner Yarbil retained Ennenga in 1993 for a civil matter on a contingency fee basis. He gave Ennenga $750 of a $2,250 retainer, but Ennenga, without informing Yarbil, stopped any prosecution of the case after filing a complaint and serving one of the two defendants.

¶ 5 Ennenga failed to timely repay a $7,500 loan from his client Rodney Glover. The court found that Ennenga's "representation of Glover enabled him to learn certain details regarding Glover's financial condition," which information we presume prompted Ennenga to ask for the loan. Ennenga did not advise his client to consult with independent counsel regarding the transaction. After suing Ennenga for payment on the loan, Glover obtained a default judgment against him.[1]

¶ 6 The trial court also found that Ennenga failed to respond to the OPC's requests for information on the Wilson, Tarbil, and Glover matters and also on a matter concerning another client, Alice Durrant Funk.[2]

1. Although it made the above findings, the trial court held that the statute of limitations barred prosecution of the Glover matter.

2. Allegations regarding the Durrant Funk matter were included in the first amended complaint. Durrant Funk filed an informal complaint with the OPC alleging that Ennenga failed to adequately represent her in the matter and then charged her an excessive fee. Ennenga reports in his brief that the merits of this matter were dismissed. We do not find an order to that effect in the record; however, whether the merits of the case were dismissed is not relevant to our decision. The trial court granted the OPC motion for summary judgment on Ennenga's failure to respond to its inquiries regarding this matter.

¶ 7 Based on these findings, the trial court held on partial summary judgment and after trial on the remaining issues, that Ennenga had violated the following rules of the Utah Rules of Professional Conduct: 1.4 (by failing to communicate with Yarbil about his representation), 1.15 (by misappropriating Wilson's money), 8.1(b) (by failing to provide information to the OPC in three of the disciplinary matters), 8.4(b) (by misappropriating Wilson's money, a criminal act that reflects adversely on the lawyer's honesty), and 8.4(c) (by engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation in the Wilson matter).

¶ 8 Following a sanctions hearing, the court issued an order suspending Ennenga from the practice of law for six months, followed by a three-year probationary period. The trial court recognized that the presumptive sanction for misappropriating a client's money is disbarment; however, it concluded after weighing the mitigating and aggravating factors as it is directed to do under rules 4.1 and 6 of the Standards for Imposing Lawyer Sanctions that a departure from the presumptive sanction was justified. The OPC appeals this sanction judgment, contending that the trial court erred in concluding that the mitigating factors were sufficient to justify a departure from presumptive disbarment. Ennenga cross-appeals, contending that the trial court violated the constitutional prohibition against ex post facto laws by applying disciplinary rules that were promulgated after his misconduct occurred.

## ANALYSIS

### I. DISBARMENT

■■■ ¶ 9 In reviewing attorney discipline cases, "while we review the trial court's finding of facts under the clearly erroneous standard, we reserve the right to draw different inferences from the facts than those drawn by the trial court." *In re Discipline of Ince*, 957 P.2d 1233, 1236 (Utah 1998) (citation omitted); see also *In re Discipline of Babilis*, 951 P.2d 207, 213 (Utah 1997). Ennenga does not dispute any of the material facts found by the trial court; thus we do not disturb them.

■■■ ¶ 10 Our only duty, then, is to make our own determination on the correctness of the disciplinary sanction imposed. *See Ince*, 957 P.2d at 1236. We look to the Standard for Imposing Lawyer Sanctions, chapter 15, of the Supreme Court Rules of Professional Practice for guidance in our decision. Rule 4 of these standards provides presumptive sanctions for certain conduct absent aggravating or mitigating circumstances. Pursuant to rule 4.2, the trial court correctly determined that the presumptive sanction for Ennenga's conduct was disbarment when it found that he had violated rules 1.15 and 8.4(b) and (c) of the Rules of Professional Conduct.[3] Under subsection 2 of rule 4, the misappropriation of Wilson's money is sufficient to trigger that sanction even without the cumulative effect of his other misconduct. In addition, the trial court correctly stated that in order to overcome the presumption of disbarment, "the aggravating and mitigating

---

3.  Subsection 2 of this rule provides that an order disbarring an attorney is presumed appropriate absent mitigating or aggravating circumstances when he or she

    (a) knowingly engages in professional misconduct as defined in Rule 8.4(a), (d), (e), or (f) of the Rules of Professional Conduct with the intent to benefit the lawyer or another or to deceive the court, and causes serious or potentially serious injury to a party, the public, or the legal system, or causes serious or potentially serious interference with a legal proceeding; or (b) engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation . . . or an attempt or conspiracy or solicitation of another to commit any of these offenses; or (c) engages in

any other intentional misconduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice law.

Standards for Imposing Lawyer Sanctions rule 4.3 provides that suspension is the presumptive sanction when a lawyer

    (a) knowingly engages in professional misconduct as defined in Rule 8.4(a), (d), (e), or (f) of the Rules of Professional Conduct and causes injury or potential injury to a party, the public, or the legal system, or causes interference or potential interference with a legal proceeding; or (b) engages in criminal conduct that does not contain the elements listed in Standard 4.2(b) but nevertheless seriously adversely reflects on the lawyer's fitness to practice law.

*Id.*

factors must be significant." *Ince,* 957 P.2d at 1237. In fact, they must be "truly compelling." *Babilis,* 951 P.2d at 217.

¶ 11 Although the trial court correctly determined that disbarment was the presumptive sanction in this case, it erroneously concluded that the mitigating factors involved were sufficient to overcome that presumption.

██ ¶ 12 In reviewing the trial court's analysis of the mitigating factors to be considered under rule 6.3 of the Standards for Imposing Lawyer Sanctions, we conclude that even the most mitigating of the factors the trial court relied on are not "truly compelling" or "significant" as is required by *Babilis.* In fact, some of the factors the trial court found to mitigate Ennenga's offenses are in fact aggravating.[4] For example, the trial court stated that "there is a prior record of discipline, but less significant than 8.4 and not of the same sort of misconduct." The prior discipline was two reprimands that Ennenga volunteered he had received in the late 1980s for failure to file pleadings. While those failures are not as serious as misappropriating client funds, they are still violations of the Utah Rules of Professional Conduct and thus constitute serious misconduct.

██ ¶ 13 The trial court also found that although Ennenga's effort "was not particularly timely, . . . he did completely rectify the consequences to Ms. Wilson." We commend Ennenga for paying Wilson her funds. However, he did not make repayment until he was forced to do so by threat of suit by Wilson and after she had made an informal complaint to the OPC. In addition, the record suggests that it was a hardship for Wilson to be without her funds, a significant amount of money, for five years. Further, Ennenga deceived Wilson during those five years to stall the inevitable discovery of his misconduct. The repaying of Wilson's money, though the right thing to do, was not accomplished in a way that mitigates the misappropriation.

██ ¶ 14 The trial court also concluded that Ennenga's "personal and emotional problems [resulting from] his inability to meet his regular financial obligations" were mitigating factors. Although we understand that the pressure of not being able to meet one's financial obligations can be great, we cannot condone the taking of a client's money to resolve that problem, even with the intent to return their funds. Personal financial pressures cannot mitigate the offense of misappropriation. *See In re Blumenstyk,* 152 N.J. 158, 704 A.2d 1, 4 (1997) ("Family financial pressures cannot excuse an attorney's ethical dereliction.").

██ ¶ 15 The trial court reasoned that the unreasonable delay in the disciplinary proceedings was a mitigating factor in this case. It found that although Ennenga contributed somewhat to the delay, "the delay is attributable as much or more to the OPC as it is to Mr. Ennenga." However, whether Ennenga's contribution to the delay was as much as or more than the OPC's contribution is not the issue. Instead we look at whether Ennenga's contribution was "substantial." Standards for Imposing Lawyer Sanctions rule 6.3. We conclude that it was.[5] Not only did Ennenga fail to "facilitate moving the case forward . . . through the discovery process," but his attempt to hide his misappropriation of Wilson's funds significantly contributed to the delay in getting the process started. His contribution, combined with the trial court's finding that he did not show any prejudice from the delay, outweighs any mitigating effect the delay may have caused.

██ ¶ 16 Finally, the trial court seemed to put great weight on the fact that "weighing the misconduct of Mr. Ennenga against the misconduct [of other attorneys disbarred by this court in recent years] shows a significant

---

4. Although we cannot determine from the order to which mitigating and aggravating factors the trial court gave more weight, we will address those that seem to have been significant to that court. Our inability to determine which factors were given more weight is not relevant to our decision because we conclude that none of the factors is sufficient to overcome the presumption.

5. In so concluding, we do not condone any undue delay on the part of the OPC. We are interested in the rapid resolution of attorney misconduct and discipline cases.

difference in the seriousness of the conduct, both as to the number of incidents, the motive of the attorney, and the time elapsed between misconduct and sanction." However, to the extent those attorneys were disbarred for misappropriating their client's funds, the misconduct *was* as serious. In addition, the standard for departing from the presumptive sanction of disbarment is a "truly compelling" mitigating factor in the circumstances of *Ennenga's* case, not the comparative seriousness of other cases.[6] We therefore conclude that none of the mitigating factors found by the trial court rise to the level of "significant" or "compelling."

## II. EX POST FACTO LAWS

¶ 17 Ennenga contends that applying the presumptive disbarment standard set forth in the current Standards for Imposing Lawyer Sanctions and the standard enunciated in *Babilis* violates the prohibition against ex post facto laws.[7] Article 1 section 18 of the Utah Constitution prohibits the passage of ex post facto laws. We have held that an "ex post facto law is one that 'punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with a crime of any defense available according to law at the time when the act was committed.' " *State v. Norton,* 675 P.2d 577, 585 (Utah 1983) (citation omitted), *overruled on other grounds by State v. Hansen,* 734 P.2d 421 (Utah 1986). Ennenga argues that he was subjected to an ex post facto law because he was disciplined under the new Standards for Imposing Lawyer Sanctions and accompanying case law, though he misappropriated Wilson's money in 1992 before those standards were articulated. He asserts that the new standards increase the

punishment for his conduct and thus violate the prohibition against ex post facto laws.[8]

¶ 18 The protection against ex post facto laws applies only to criminal punishment, not civil remedies. To determine whether a statutorily defined remedy, or in this case a remedy defined by the rules of this court, is civil or criminal in nature, we apply the test enunciated by the United States Supreme Court in *United States v. Ward,* 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980), and applied by this court in *State v. Davis,* 972 P.2d 388, 391 (Utah 1998). First, we look to see whether the rule "indicated either expressly or impliedly a preference for one label or the other." *Ward,* 448 U.S. at 248, 100 S.Ct. 2636. If the rule expressly or impliedly labels the remedy civil, we must then inquire whether the rule is "so punitive either in purpose or effect as to negate that intention." *Id.* at 248–49, 100 S.Ct. 2636. However, as the Supreme Court noted in *Ward,* "the clearest proof [of punitive purpose or effect] is required to negate the express or implied intention to make the remedy civil." *Id.* at 249, 100 S.Ct. 2636.

¶ 19 Pursuant to our constitutional mandate to govern the practice of law, we adopted the Rules of Lawyer Discipline and Disability. Rule 1(c) of the Rules of Lawyer Discipline and Disability provides that "[f]ormal disciplinary and disability proceedings are civil in nature." Thus, the rules governing disciplinary proceedings are "labeled" civil. We must now determine whether there is clear proof that the rules are nonetheless "so punitive either in purpose or effect as to negate that intention." *Ward,* 448 U.S. at 248–49, 100 S.Ct. 2636.

¶ 20 Rule 1.1 of the Standards for Imposing Lawyer Sanctions provides that the pur-

---

**6.** We note that the trial court also found significant aggravating factors that we do not need to address. Combined with the lack of significant mitigating circumstances, the aggravating factors provide additional reason to disbar Ennenga.

**7.** As previously noted, Ennenga misappropriated the money in 1992. In 1993, we adopted the Rules of Lawyer Discipline and Disability in which we restructured the proceedings and procedure of lawyer discipline cases, including the Standard for Imposing Lawyer Sanction. *Babilis,* the first case in which we established a bright

line rule for disbarment sanctions in misappropriation cases, was decided in 1997.

**8.** Ennenga does not state whether he relies on the federal or the state constitution for protection against ex post facto laws. We presume, however, that he makes his claim under the Utah Constitution because he relied only on Utah case law in his argument and cited cases decided by the United States Supreme Court only to the extent they were cited in the Utah cases. Thus, we review his argument only under Utah law.

pose of sanctioning attorneys is not to punish them for their conduct, but

> to ensure and maintain the high standard of professional conduct required of those who undertake the discharge of professional responsibilities as lawyers, and to protect the public and the administration of justice from lawyers who have demonstrated by their conduct that they are unable or likely to be unable to discharge properly their professional responsibilities.

We stated in *Babilis* that

> "[a]n attorney's license to practice law is contingent on compliance with professional ethical standards. A restriction on, or withdrawal of, the right to practice law as a sanction for violation of professional ethical standards is remedial in nature. 'Bar proceedings are civil in nature. Their aim is to maintain the honesty, integrity and professionalism of the Bar.'"

*Babilis*, 951 P.2d at 214 (citation omitted). Thus the purpose of attorney sanctions clearly is not punitive.

¶ 21 Ennenga asserts that the effect of attorney sanctions is punitive and that "attorney discipline has historically been regarded by the public and the legal profession as punishment, at least when sanctions of suspension or disbarment are imposed." However, we agree with the OPC that the clear weight of authority disputes this statement. Of the twelve jurisdictions from which we have reviewed cases addressing the issue, all twelve have held that attorney discipline is not criminal punishment but is instead a civil remedy regulating the practice of law. *In re Hoover*, 161 Ariz. 529, 779 P.2d 1268, 1271 (1989); *Gary v. State Bar*, 44 Cal.3d 820, 244 Cal.Rptr. 482, 749 P.2d 1336, 1340 (1988); *In re Stanton*, 757 A.2d 87, 90 (D.C.Ct.App.2000); *In re Samuels*, 126 Ill.2d 509, 129 Ill.Dec. 43, 535 N.E.2d 808, 813 (1989); *In re Craven*, 178 La. 372, 151 So. 625, 626 (1930); *Braverman v. Bar Assoc. of Baltimore City*, 209 Md. 328, 121 A.2d 473, 477 (1956); *In re Leifer*, 63 A.D.2d 174, 177, 407 N.Y.S.2d 1 (N.Y.App.Div.1978); *North Carolina State Bar v. Dumont*, 52 N.C.App. 1, 277 S.E.2d 827, 836 (1981); *Norfolk & Portsmouth Bar Assoc. v. Drewry*, 161 Va. 833, 172 S.E. 282, 284 (1934); *In re Brown*, 157 W.Va. 1, 197 S.E.2d 814, 817 (1973); *In re Rabideau*, 102 Wis.2d 16, 306 N.W.2d 1, 6 (1981). *But see Brooks v. Alabama State Bar*, 574 So.2d 33, 34 (Ala.1990). We thus conclude that sanctions resulting from attorney discipline proceedings are civil remedies, not criminal punishments subject to the prohibition against ex post facto laws.

## CONCLUSION

¶ 22 We order the disbarment of Ennenga. In so doing, the conditional prohibition against the passage of ex post facto laws is not violated. As we stated in *In re Discipline of Johnson*, "[w]e do not administer the sanction of disbarment lightly; we understand its devastating effects on an attorney. However, we are charged with protecting the public and the legal system of our state from those attorneys who do not abide by their professional responsibilities, and we cannot tolerate the intentional misappropriation of a client's funds." 2001 UT 110, ¶ 14, —— P.3d ——, 2001 WL 1604469.

¶ 23 Associate Chief Justice RUSSON, Justice DURHAM, Justice WILKINS, and Judge BENCH concur in Chief Justice HOWE's opinion.

¶ 24 Having disqualified himself, Justice DURRANT does not participate herein; Court of Appeals Judge RUSSELL W. BENCH sat.