2012 UT 87

**In the Matter of the DISCIPLINE OF Jonathon W. GRIMES.**

**No. 20110171.**

Supreme Court of Utah.

Dec. 11, 2012.

Rehearing Denied Feb. 8, 2013.

As Amended March 21, 2013.

Gregory G. Skordas, Rebecca Hyde Skordas, Daniel R. Strong, Salt Lake City, for appellee.

Adam C. Bevis, Billy L. Walker, Salt Lake City, for appellant.

Justice PARRISH, opinion of the Court:

## INTRODUCTION

¶ 1 In this attorney discipline case we are asked to review the district court's decision to depart from the presumptive sanction of disbarment and instead suspend attorney Jonathon W. Grimes for misappropriating client funds.[1]  First, we consider whether our deci-

---

1.  Mr. Grimes directed his client's retainer for  Mr. Grimes's personal use.  Although the district

sion in *In re Discipline of Crawley,* 2007 UT 44, 164 P.3d 1232, permits a downward departure from a presumptive sanction of disbarment if the lesser sanction is paired with probation. Second, we evaluate whether Mr. Grimes presented truly compelling mitigating circumstances justifying a downward departure from the presumptive sanction.

¶ 2 The Standards for Imposing Lawyer Discipline (Standards) specify the presumptive sanctions for various types of attorney misconduct. We have previously recognized the authority of the district courts to depart from the presumptive sanctions by imposing probation. *Id.* ¶ 20. But we hold today that a district court may not depart from a presumptive sanction of disbarment absent truly compelling mitigating circumstances and we conclude that Mr. Grimes did not demonstrate such circumstances. As a result, we reverse the district court and disbar Mr. Grimes.

## BACKGROUND

¶ 3 Jonathon Grimes obtained a license to practice law in 2005 and began working for attorney J. Kent Holland. Shortly thereafter, Bill Riordan hired Mr. Grimes to pursue an employment discrimination claim. Mr. Riordan paid Mr. Grimes a $10,000 retainer, which was deposited into Mr. Holland's trust account. In 2006, Mr. Grimes left Mr. Holland's firm and took Mr. Riordan's case with him. Mr. Holland's office thereafter transferred the remainder of Mr. Riordan's retainer, $7,070, to Mr. Grimes.

¶ 4 In 2007, Mr. Grimes stopped communicating with Mr. Riordan. Mr. Riordan attempted to contact Mr. Grimes numerous times by telephone, mail, and fax, but Mr. Grimes never responded. Moreover, Mr. Grimes failed to pursue Mr. Riordan's case, and it was subsequently dismissed. Mr. Grimes failed to inform Mr. Riordan of the dismissal. Eventually, Mr. Riordan learned of the dismissal and authorized Mr. Grimes to refile the case. But Mr. Grimes again stopped communicating. Ultimately, Mr. Riordan hired another attorney to resolve his claim. Mr. Riordan repeatedly asked Mr. Grimes to account for his retainer and to return the unused portion. Mr. Grimes initially denied having the retainer and later refused to return it.

¶ 5 Because of Mr. Grimes's conduct, Mr. Riordan filed an informal complaint with the Utah State Bar's Office of Professional Conduct (OPC). The OPC served Mr. Grimes with a Notice of Informal Complaint, but Mr. Grimes failed to respond. The Screening Panel of the Ethics and Discipline Committee of the Utah State Bar (Screening Panel) then held a hearing and directed the OPC to file a formal complaint against Mr. Grimes.

¶ 6 The OPC filed a complaint alleging that Mr. Grimes had violated eight of the Rules of Professional Conduct (Rules), including rules 1.2(a) (scope of representation), 1.3 (diligence), 1.4(a) (communication), 1.4(b) (communication), 1.5(a) (fees), 8.4(a) (misconduct), 8.4(c) (misconduct), and 8.4(d) (misconduct). After a hearing, the district court concluded that Mr. Grimes had violated all of the rules, except rule 1.4(b).[2]

¶ 7 Having found that Mr. Grimes had violated the Rules, the district court held a sanctions hearing and issued an Order of Sanction (Order). First, the district court found that Mr. Grimes failed to be diligent, communicative, and honest in his representation of Mr. Riordan. Second, it determined that Mr. Grimes knew the $7,070 check from Mr. Holland's office was Mr. Riordan's unearned retainer, that Mr. Grimes received the check, deposited it into his personal account, and spent it for his personal use. Additionally, the court found that Mr. Grimes failed to tell Mr. Riordan he received the retainer and, on several occasions, dishonestly told Mr. Riordan he did not have it. Third, the district court concluded Mr. Grimes injured Mr. Riordan by delaying res-

court did not use the term misappropriation to describe Mr. Grimes's actions, both Mr. Grimes and the Office of Professional Conduct describe Mr. Grimes's offense as misappropriation in their briefs, and Mr. Grimes does not dispute that his conduct constituted misappropriation.

2. The district court did not make a conclusion with respect to rule 1.4(b).

olution of his case and forcing him to retain and pay for another attorney. Finally, the district court recognized that the presumptive sanction for misappropriation of client funds, absent truly compelling mitigating circumstances, was disbarment.

¶ 8 The district court then reviewed the aggravating and mitigating factors in Mr. Grimes's case. With respect to the aggravating factors, the district court found that Mr. Grimes had a selfish and dishonest motive because he lied about having Mr. Riordan's retainer and because he converted the retainer to his personal use without having earned it. The district court also found that Mr. Grimes refused to acknowledge his wrongdoing both to Mr. Riordan and at the hearing before the Screening Panel. It also noted that Mr. Grimes had not paid any restitution to Mr. Riordan.

¶ 9 Next, the district court considered the mitigating factors. It found that Mr. Grimes had no prior record of discipline and did not have extensive experience in the practice of law. It further found that Mr. Grimes suffered from emotional and personal problems related to his finances, marriage, and his family's health. Based on testimony from members of the criminal defense bar, the court found that Mr. Grimes "has a good reputation, is hard working[,] and is considered to be honest." Finally, it found that Mr. Grimes had undertaken interim reforms because he had stopped practicing civil law and had removed himself as a signatory on his firm's trust account.

¶ 10 The district court did not enter any factual findings or conclusions of law weighing these aggravating and mitigating circumstances, nor did it make any explicit finding that the mitigating circumstances were truly compelling. Instead, relying on our decision in *In re Discipline of Crawley*, 2007 UT 44, 164 P.3d 1232, it found that justice would best be served by a downward departure from the presumptive sanction of disbarment. Accordingly, the district court suspended Mr. Grimes from the practice of law for three years and stayed all but 181 days of the suspension. It conditioned the stay on the following probationary terms: Mr. Grimes could not practice law during the suspension,

could not violate the Rules of Professional Conduct, must report to a supervising attorney, must complete an ethics and professional conduct course, and must pay court-scheduled restitution to Mr. Riordan.

¶ 11 The OPC filed a timely appeal of the Order. We have jurisdiction pursuant to section 78A-3-102(3)(c) of the Utah Code.

## STANDARD OF REVIEW

¶ 12 The Utah Constitution grants us authority to "govern the practice of law, including ... discipline of persons admitted to practice law." UTAH CONST. art. VIII, § 4. Accordingly, "[w]hile we will ordinarily presume [the district court's] findings of fact to be correct and will not overturn them unless they are arbitrary, capricious, or plainly in error, we accord them less deference in matters of attorney discipline." *In re Discipline of Corey*, 2012 UT 21, ¶ 23 n. 13, 274 P.3d 972 (internal quotation marks omitted). And, "we reserve the right to draw inferences from basic facts which may differ from the inferences drawn by the [district court]." *Id.* (internal quotation marks omitted). Ultimately, "[a]s to the discipline actually imposed, our constitutional responsibility requires us to make an independent determination as to its correctness." *In re Discipline of Crawley*, 2007 UT 44, ¶ 17, 164 P.3d 1232 (internal quotation marks omitted).

## ANALYSIS

¶ 13 The Standards outline the factors to be considered in imposing sanctions for attorney misconduct. Their purpose is to

ensure and maintain the high standard of professional conduct required of those who undertake the discharge of professional responsibilities as lawyers, and to protect the public and the administration of justice from lawyers who have demonstrated by their conduct that they are unable or likely to be unable to discharge properly their professional responsibilities.

SUP.CT. R. PROF'L PRACTICE 14–602(b).

¶ 14 The Standards specify that the relevant considerations in imposing sanctions are

"the duty violated," "the lawyer's mental state," "the potential or actual injury caused by the lawyer's misconduct," and "the existence of aggravating or mitigating factors." *Id.* 14-604(a)-(d). The factors "permit[ ] flexibility and creativity in assigning sanctions in particular cases of lawyer misconduct." *Id.* 14-602(d).

¶ 15 While the Standards offer flexibility, they also provide a framework and prescribe presumptive sanctions for certain types of misconduct. *See id.* 14-603, 14-605. Disbarment is the presumptive sanction for intentional misappropriation of a client's funds. *In re Discipline of Babilis*, 951 P.2d 207, 217 (Utah 1997). This severe sanction is appropriate because "[i]ntentional misappropriation of a client's funds is always indefensible; it strikes at the very foundation of the trust and honesty that are indispensable to the functioning of the attorney-client relationship and, indeed, to the functioning of the legal profession itself." *Id.* In cases of intentional misappropriation of client funds, we previously have ruled that a downward departure from the presumptive sanction of disbarment is appropriate only when a lawyer demonstrates "truly compelling mitigating circumstances." *In re Discipline of Johnson*, 2001 UT 110, ¶ 9, 48 P.3d 881 (internal quotation marks omitted).

¶ 16 In this case, the parties agree that the presumptive sanction for Mr. Grimes's misappropriation is disbarment. Thus, we must decide whether the district court erred when it departed from this presumptive sanction and suspended Mr. Grimes. First, we address whether the district court properly relied on *Crawley* to depart from the presumptive sanction. Second, we discuss whether Mr. Grimes identified "truly compelling mitigating circumstances" justifying a downward departure from the presumptive sanction of disbarment.

## I. THE DISTRICT COURT ERRED WHEN IT RELIED ON *CRAWLEY* TO DEPART FROM THE PRESUMPTIVE SANCTION OF DISBARMENT

¶ 17 In *In re Discipline of Crawley,* we reviewed two attorney discipline cases in which the presumptive sanction was suspension. 2007 UT 44, ¶¶ 7, 14, 164 P.3d 1232. In one, the district court stayed a one-year suspension in favor of eighteen months of probation, and in the other, it issued a one-year suspension, but granted leave to petition for a stay of all but three months of the suspension. *Id.* ¶¶ 7, 15. On appeal, the OPC argued that the district court inappropriately used probation as a final sanction. *Id.* ¶ 21. The OPC also asked that we "adopt guidelines detailing the circumstances under which probation is not appropriate." *Id.*

¶ 18 We declined the OPC's request to adopt guidelines for the use of probation and noted our satisfaction with "the discretion currently being exercised by district courts in sanctioning attorneys for misconduct." *Id.* ¶ 22. We acknowledged the variation in misconduct, aggravating and mitigating circumstances, and the accompanying difficulty in crafting appropriate, individualized sanctions in attorney discipline cases. *Id.* We applauded district courts for their success in balancing the protection of the public and effective administration of justice with, when appropriate, the opportunity for attorney rehabilitation. *Id.* ¶ 23. And we concluded that limiting district courts' flexibility to use probation "would very likely undermine [their] ability ... to so effectively maintain this balance." *Id.* As a result, we upheld the district courts' decisions refining the presumptive sanction of suspension with probation. *Id.* ¶ 25.

¶ 19 In this case, the OPC argues the imposition of probation may not provide the sole justification for departing from a presumptive sanction of disbarment. We agree. While *Crawley* makes clear that probation may be used to tailor or enhance a particular sanction, it did not address probation in a context where the presumptive sanction was disbarment. As a practical matter, probation cannot coexist with disbarment. Because a disbarred lawyer does not have the right to practice law, the concept of probation has no possible application where the presumptive sanction is disbarment unless the mere availability of probation were a sufficient basis on which to depart from the presumptive sanction. But it is not. Indeed, we have previously held that a departure

from the presumptive sanction of disbarment in cases involving intentional misappropriation can only be justified by "truly compelling mitigating circumstances." *In re Discipline of Johnson*, 2001 UT 110, ¶ 9, 48 P.3d 881 (internal quotation marks omitted).

¶ 20 Here, it appears that the district court departed from the presumptive sanction of disbarment based exclusively upon the availability of probation as an alternative sanction. The court made no finding that "truly compelling mitigating circumstances" did, or did not, exist. Rather, it simply relied on *Crawley*, noting that "the Standards permit flexibility and creativity in deciding sanctions" and that justice "would be served . . . by the use of discipline below the level of disbarment." Such an approach was in error.

¶ 21 While *Crawley* permits tailoring of sanctions through the use of probation, it does not independently permit a downward departure from the presumptive sanction of disbarment based on the mere availability of probation. Under our controlling precedent in *Johnson*, departure from the presumptive sanction of disbarment in cases involving intentional misappropriation of client funds is only appropriate in cases presenting "truly compelling mitigating circumstances." Because the district court failed to find the existence of "truly compelling mitigating circumstances" in this case, it erred in reducing Mr. Grimes's presumptive sanction of disbarment. We therefore turn to Mr. Grimes's alternative argument that the evidence presented to the district court established the existence of truly compelling mitigation.[3]

## II. MR. GRIMES FAILED TO PRESENT TRULY COMPELLING MITIGATING CIRCUMSTANCES JUSTIFYING A DOWNWARD DEPARTURE FROM THE PRESUMPTIVE SANCTION OF DISBARMENT

¶ 22 At the sanction hearing, Mr. Grimes presented evidence of six mitigating factors.

Although the district court did not specifically find that these factors constitute "truly compelling mitigating circumstances," Mr. Grimes argues that the district court implicitly found them to do so based on its decision to depart from the presumptive sanction of disbarment. The OPC responds that the mitigating factors presented by Mr. Grimes do not rise to the level of "truly compelling" and are therefore insufficient to support a departure from the presumptive sanction.

¶ 23 To determine whether "truly compelling mitigating circumstances" exist, we look to "the duty violated, the lawyer's mental state, the potential or actual injury caused, and the existence of aggravating or mitigating circumstances." *In re Discipline of Johnson*, 2001 UT 110, ¶ 9, 48 P.3d 881 (tracking the language of rule 14–604 of the Standards). Here, we hold that, when compared to his intentional misappropriation, its concomitant injury to Mr. Riordan, and other aggravating factors, the mitigating circumstances offered by Mr. Grimes do not rise to the level of "truly compelling" and therefore do not justify a departure from the presumptive sanction of disbarment.

### A. Mitigating Circumstances

¶ 24 Mr. Grimes argues that his (1) "absence of a prior record of discipline," (2) "inexperience in the practice of law," (3) "good character or reputation," (4) "remorse," (5) "interim reform," and (6) "personal or emotional problems" constitute "truly compelling mitigating circumstances." We analyze each to determine what weight, if any, they should be afforded and then assess them in light of the aggravating circumstances to determine whether or not they collectively constitute truly compelling mitigation.

¶ 25 Mr. Grimes correctly notes that he has no record of prior discipline. We note, however, that this fact is unremarkable

---

3. Were this a case of a different type, a remand for further factual determinations may be appropriate. Because this case involves attorney discipline, however, "our constitutional responsibility requires us to make an independent determination as to [the] correctness [of sanctions]."

*Crawley*, 2007 UT 44, ¶ 17, 164 P.3d 1232 (internal quotation marks omitted). We are therefore comfortable in undertaking the task of determining whether Mr. Grimes has established the existence of "truly compelling mitigating circumstances."

here, where the misappropriation occurred within the first few years after Mr. Grimes was admitted to the practice of law.

¶ 26 Second, Mr. Grimes argues that his inexperience in the practice of law contributed to his delay in handling Mr. Riordan's case and his mishandling of the retainer. While his inexperience may somewhat mitigate his lack of diligence, it does not take substantial experience in the practice of law to know that misappropriation is improper. Though rule 14-607(b)(6) recognizes "inexperience in the practice of law" as a mitigating factor, we give the factor limited weight in misappropriation cases because the prohibition on misappropriation of client funds is fundamental to the practice of law. In short, we are not persuaded that Mr. Grimes's inexperience in the practice of law contributed to his misappropriation.

¶ 27 Third, Mr. Grimes argues that his good character and reputation mitigate his misconduct. Specifically, Mr. Grimes claims that he has a "sterling reputation as a lawyer in the criminal defense bar." Additionally, he serves on the legislative committee of the United Association of Criminal Defense Lawyers, gives continuing legal education presentations, and provides pro bono legal services. The OPC argues that while one's good reputation may mitigate less serious misconduct, it is insufficient to constitute "truly compelling" mitigation in cases of intentional misappropriation. The OPC's view is consistent with our opinion in *Johnson,* where we held that "[a]lthough a good reputation and community service are commendable, they do not constitute truly compelling mitigating circumstances when there has been a misappropriation of [a] client's funds." 2001 UT 110, ¶ 10, 48 P.3d 881 (internal quotation marks omitted). As in *Johnson,* Mr. Grimes's community involvement and pro bono work, standing alone, do not constitute "truly compelling mitigating circumstances."

¶ 28 Fourth, Mr. Grimes asserts that he admitted his misdeeds and acknowledged that he owes Mr. Riordan restitution. But in *In re Discipline of Stubbs,* we held that "remorse [presented for the first time] at

trial is irrelevant." 1999 UT 15, ¶ 22, 974 P.2d 296 (internal quotation marks omitted). Rather, "remorse must generally be linked to the acknowledgment of wrongful conduct and motivation to make amends *prior* to being caught." *Id.* Here, Mr. Grimes did not exhibit remorse until his sanction hearing. When Mr. Riordan initially asked Mr. Grimes to refund his remaining retainer, Mr. Grimes refused. When the OPC sent Mr. Grimes a Notice of Informal Complaint, Mr. Grimes did not respond. At his Screening Panel hearing, Mr. Grimes did not admit wrongdoing. It was not until his sanction hearing, after the district court had already found that he had violated the Rules, that Mr. Grimes finally admitted he had mishandled Mr. Riordan's case and needed to repay the retainer. The district court found that this dilatory admission did not evidence remorse because, at the time of the Order, Mr. Grimes still had not repaid any of Mr. Riordan's retainer. We therefore assign no weight to Mr. Grimes's asserted remorse.

¶ 29 Fifth, Mr. Grimes identifies several interim reforms he has taken to mitigate his misconduct. Mr. Grimes no longer practices civil law, has established a support network to assist with complicated cases, and is not a signatory on his firm's trust account. But Mr. Grimes's decision not to practice civil law and his establishment of a professional support network are unrelated to his misappropriation. And Mr. Grimes's decision to remove himself as a signatory on his firm's trust account does not necessarily foreclose future misappropriation because Mr. Grimes could still divert client funds to his personal use before they are deposited into the trust account. Thus, while we acknowledge that Mr. Grimes has made some efforts at interim reform, we do not find them to be independently compelling.

¶ 30 Finally, Mr. Grimes argues that he suffered a number of personal and emotional problems during his representation of Mr. Riordan. These problems included financial hardship, marital strain, depression, personal injury, and the severe illness of his youngest son. The OPC replies that, although Mr. Grimes's personal and emotional problems

are unfortunate, they do not constitute "truly compelling" mitigation.

¶ 31 We first consider the mitigating effects of Mr. Grimes's financial difficulties. Mr. Grimes testified that he only earned approximately $13,000 over a period of thirteen months while working for Mr. Holland and that this low wage caused severe financial distress because it was simply insufficient to support himself, his wife, and his five children. But we have previously held that "[p]ersonal financial pressures cannot mitigate the offense of misappropriation." *In re Discipline of Ennenga*, 2001 UT 111, ¶ 14, 37 P.3d 1150. While "we understand that the pressure of not being able to meet one's financial obligations can be great, we cannot condone the taking of a client's money to resolve that problem." *Id.*

¶ 32 We next consider the mitigating effect of Mr. Grimes's mental health problems. We have noted the "possibility that . . . mental health issues might rise to the level of truly compelling mitigation." *In re Discipline of Corey*, 2012 UT 21, ¶ 37 n. 17, 274 P.3d 972 (internal quotation marks omitted). But we have also warned that allowing attorneys to "speculate that their history of substance abuse or mental impairment could have contributed to their bad behavior" would "risk allowing the narrow exception to trample the general rule." *Id.*

¶ 33 In *Corey*, we were asked to determine whether an attorney's claim that a brain cyst caused his misconduct constituted "truly compelling mitigation." *Id.* ¶ 20. Rule 14-607(b)(9) allows a "mental disability or impairment" to qualify as a mitigating circumstance if it is causally connected to the misconduct, the attorney recovers from the

disability, and recovery arrests the misconduct. SUP.CT. R. PROF'L PRACTICE 14-607(b)(9)(A)–(D). In that case, we held that the attorney had failed to establish a causal connection between his brain cyst and his misconduct. *Corey*, 2012 UT 21, ¶ 31, 274 P.3d 972. This lack of a causal connection led us to conclude that he had not presented "truly compelling . . . mitigation."[4] *Id.* (internal quotation marks omitted).

¶ 34 As was the case in *Corey*, Mr. Grimes has failed to establish a causal connection between his mental health problems and his misconduct. The only evidence of Mr. Grimes's emotional problems came from his own testimony.[5] No expert or other lay witnesses testified to Mr. Grimes's asserted depression. Mr. Grimes did not point to any evidence of a mental health diagnosis or a causal relationship between his mental health problems and his misconduct. Taken together, the lack of evidence of a documented mental health issue and the absence of a demonstrated causal connection present only weak mitigating evidence.

### B. Aggravating Circumstances

¶ 35 The district court identified two aggravating circumstances pursuant to rule 14-607(a). First, it found that Mr. Grimes had a "dishonest or selfish motive." SUP.CT. R. PROF'L PRACTICE 14-607(a)(2). The district court explained that Mr. Grimes knew that the retainer belonged to Mr. Riordan, but he still used it for his own needs. Moreover, Mr. Grimes falsely told Mr. Riordan on several occasions that he did not have the retainer.

---

4. Mr. Grimes relies on two cases from the District of Columbia to support his position that his emotional problems mitigate his misconduct. *See In re Cappell*, 866 A.2d 784, 784–85 (D.C. 2004) (per curiam) (departing from a presumptive sanction of disbarment because the attorney "had suffered from major depression at the time of the misconduct and the misconduct would not have occurred *but for* his depression" (emphasis added) (footnote omitted)); *In re Kersey*, 520 A.2d 321, 327 (D.C.1987) (departing from a presumptive sanction of disbarment because *"[b]ut for* [the attorney's] alcoholism, his misconduct would not have occurred"* (emphasis added)). But neither of these cases is controlling. More-

over, in both *Cappell* and *Kersey*, a departure from a presumptive sanction was permitted only because the lawyers had been able to establish a causal relationship between their mental health problems or substance abuse and their misconduct. Such a causal relationship is lacking here.

5. At the sanction hearing, Mr. Grimes's attorney asked him how his financial problems affected him psychologically. Mr. Grimes responded, "I was down . . . you know, money causes strain." As a result, Mr. Grimes testified that he did "some counseling" for depression and "some" marital counseling with his wife.

¶ 36 Second, the district court found that Mr. Grimes "[r]efused to acknowledge the wrongful nature of the misconduct ... either to the client or to the disciplinary authority." *See id.* § 14-607(a)(7). The district court explained that Mr. Grimes did not acknowledge to his client or to the Screening Panel that his actions were improper.

### C. The Facts Present Here Do not Rise to the Level of "Truly Compelling Mitigating Circumstances"

¶ 37 We now weigh Mr. Grimes's mitigating and aggravating circumstances. In favor of mitigation are Mr. Grimes's lack of prior record, efforts at reform, good character, and personal and emotional problems. Mr. Grimes's aggravating circumstances include a dishonest or selfish motive and a refusal to acknowledge the wrongful nature of his misconduct. In the context of his intentional misappropriation and these aggravating circumstances, we hold that the mitigating circumstances are relatively weak. They are certainly not sufficiently compelling to justify a downward departure from the presumptive sanction of disbarment.

¶ 38 In the alternative, Mr. Grimes argues that we need not find "truly compelling" mitigation because his case of misappropriation is distinguishable from other misappropriation cases in which disbarment was ordered. Specifically, Mr. Grimes argues that the attorneys disbarred in previous cases misappropriated larger sums of money and presented less compelling mitigating circumstances. *See, e.g., Johnson,* 2001 UT 110, ¶¶ 11, 14, 48 P.3d 881 (affirming disbarment where attorney misappropriated $28,800 of his client's retainer); *In re Discipline of Babilis,* 951 P.2d 207, 209, 217 (Utah 1997) (affirming disbarment where attorney misappropriated $78,659.43 from his client's estate). Mr. Grimes argues that his misconduct is more similar to that of a California attorney who received only a sanction of suspension after misappropriating approximately $3,000 of his client's funds. *See Edwards v. State Bar,* 52 Cal.3d 28, 276 Cal. Rptr. 153, 801 P.2d 396, 403 (1990).

¶ 39 We are not persuaded. We have previously held that "the standard for departing from the presumptive sanction of disbarment is [the presence of] ... truly compelling mitigating [circumstances, and] ... not the comparative seriousness of other cases." *Ennenga,* 2001 UT 111, ¶ 16, 37 P.3d 1150 (internal quotation marks omitted). For example, in *Ennenga,* although the district court had weighed Mr. Ennenga's misconduct against the seriousness of other attorneys' misconduct, we reasoned that "to the extent those attorneys were disbarred for misappropriating their client's funds, the misconduct *was* as serious." *Id.* Because any misappropriation of client funds is a serious violation of the Rules, we decline to impose a lesser sanction on Mr. Grimes simply because he misappropriated a smaller amount of money than did the attorneys in *Babilis, Johnson,* or *Edwards.*

¶ 40 Misappropriation is a severe violation of the Rules. The presumptive sanction is disbarment. "[W]e cannot tolerate the intentional misappropriation of a client's funds." *Johnson,* 2001 UT 110, ¶ 14, 48 P.3d 881. And we construe truly compelling mitigating circumstances relatively narrowly. *See, e.g., Corey,* 2012 UT 21, ¶ 37 n. 17, 274 P.3d 972. Here, Mr. Grimes's dishonesty and refusal to acknowledge his wrongdoing outweigh any mitigating circumstances. We accordingly hold that Mr. Grimes failed to present "truly compelling mitigating circumstances" justifying a departure from the presumptive sanction of disbarment.

### CONCLUSION

¶ 41 The district court erred when it relied on *In re Discipline of Crawley,* 2007 UT 44, 164 P.3d 1232, to depart from the presumptive sanction of disbarment. Although the availability of probation allows a district court to tailor a presumptive sanction, it does not provide an independent basis for departing from a presumptive sanction of disbarment. And because the factors identified by Mr. Grimes do not constitute "truly compelling mitigating circumstances," the district court erred in departing from the presumptive sanction. We accordingly reverse the district court's order of suspension and order the disbarment of Mr. Grimes. Pursuant to rule 14-525(a), Mr. Grimes may apply for

 

readmission to the bar five years after the effective date of disbarment. Mr. Grimes's 217–day suspension shall count towards this five year period.

¶ 42 As we stated in *In re Discipline of Johnson,* "[w]e do not administer the sanction of disbarment lightly; we understand its devastating effects on an attorney. However, we are charged with protecting the public . . . from those attorneys who do not abide by their professional responsibilities, and we cannot tolerate the intentional misappropriation of a client's funds." 2001 UT 110, ¶ 14, 48 P.3d 881.

Justice PARRISH authored the opinion of the Court, in which Chief Justice DURRANT, Associate Chief Justice NEHRING, Justice DURHAM, and Justice LEE joined.