IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 117,201

In the Matter of ALVIN R. LUNDGREN,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed May 26, 2017. Disbarment.

*Kimberly L. Knoll*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the formal complaint for the petitioner.

Respondent did not appear.

*Per Curiam*: This is an uncontested original proceeding in discipline filed by the office of the Disciplinary Administrator against respondent, Alvin R. Lundgren, of Veyo, Utah, an attorney admitted to the practice of law in Kansas in 1990.

On July 20, 2016, the office of the Disciplinary Administrator filed a formal complaint against respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). Respondent filed an answer on August 15, 2016. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on October 6, 2016, at which the respondent appeared pro se. The hearing panel determined that respondent violated KRPC 1.15(a) and (d) (2017 Kan. S. Ct. R. 326) (safekeeping property); 8.3(a) (2017 Kan. S. Ct. R. 378) (reporting professional misconduct); 8.4(c) (2017 Kan. S. Ct. R. 379) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); Kansas Supreme Court Rule 207(c) (2017 Kan. S. Ct. R. 246) (failure to report action); and Kansas Supreme Court Rule 208(c) (2017 Kan. S. Ct. R. 246) (failure to notify Clerk of the Appellate Courts of change of address).

1

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

. . . .

"6.     In August 1989, the Utah Supreme Court admitted the respondent to the practice of law in Utah.

"7.     The Kansas Supreme Court admitted the respondent to the practice of law in the State of Kansas on September 20, 1990.

"8.     The Missouri Supreme Court also admitted the respondent to the practice of law in 1990.

"9.     On April 12, 1994, the California Supreme Court admitted the respondent to the practice of law. Prior to his admission to the practice of law in the State of California, the respondent engaged in misconduct.

'Count One:

'In November 1992, Respondent was hired by Checkrite to perform debt collection work. Checkrite hired Respondent to recover debts from checks written on insufficient funds and closed bank accounts that had been issued to California merchants. At the time, Respondent was working as an attorney in Utah.

'Between April 1993 and August 1993, Respondent sent letters to debtors on letterhead which stated "Lundgren & Associates, P.C. Attorneys at Law." The letterhead listed an address in Sacramento, California. At the time, Respondent was not admitted to practice law in the State of California. The letterhead did not mention the jurisdictions that Respondent was admitted as a member of the bar.

2

'In June 1993, Respondent sent a check to the State Bar's Committee of Bar Examiners to pay fees associated with his application for admission to the State Bar of California. The check was imprinted with Respondent's Sacramento address and indicated that the account belonged to "Lundgren & Associates, P.C., Attorneys at Law." Respondent was not admitted to the practice of law in California until April 12, 1994.

'By sending out letters and issuing checks imprinted with "Attorney at Law," Respondent held himself out as being entitled to practice law in the State of California in violation of Business and Professions Code sections 6125(a) and 6126.

'Conclusions of Law: By the foregoing conduct, Respondent committed a willful violation of Business and Professions Code section 6068(a).

'Counts Five and Eight:

'In 1993, a civil complaint was filed against Respondent and other defendants for violations of the federal Fair Debt Collections Act and the California Unfair Business Practices Act, in a suit entitled *Newman v. Checkrite*, Eastern District Court of California, U.S. District Court case number CIV-S-93 1557 LKK PAN.

'On January 25, 1994, Respondent appeared at a scheduling conference acting as the attorney for defendant [D.K.] in the *Newman* case. Prior to February 18, 1994, Respondent negotiated with plaintiff's counsel to obtain an extension of time for [D.K.] to respond to plaintiff's discovery.

3

'Respondent was not admitted to practice law in the U.S. District Court for the Eastern District of California until May 18, 1994. Respondent did not seek pro hac vice status to practice in the court pending his admission to this State Bar of California. He also did not inform the court that he was not admitted to practice in the U.S. District Court for the Eastern District of California at the time that he made the appearance on behalf of [D.K.].

'By making an appearance in court on behalf of a client in negotiating an extension of time prior to being admitted to the practice of law before the federal court, Respondent engaged in the practice of law in a jurisdiction while he was not licensed to do so.

'Conclusions of Law: By the foregoing conduct, Respondent committed a willful violation of Rules 1-300(B) and 5-200(B) of the Rules of Professional Conduct.'

"10.     On July 13, 1998, the California Supreme Court entered an order suspending the respondent's license to practice law in that state for a period of 18 months. After serving 1-month suspension, the respondent was placed on probation.

"11.     On February 22, 2000, the Missouri Supreme Court entered an order concluding that the respondent violated Rule 4-5.5 (a) for engaging in the unauthorized practice of law in California. That court entered an order indefinitely suspending the respondent from the practice of law in Missouri. Thereafter, on May 30, 2000, the Missouri Supreme Court reinstated the respondent's license to practice law.

"12.     J.B. filed a complaint against the respondent with the Utah State Bar, Office of Professional Conduct ('OPC'). Thereafter, on October 31, 2012, the OPC filed a motion for summary judgment in the second district court for Morgan County, Utah.

"13.     On February 1, 2013, the second district court for Morgan County, Utah, granted the OPC's motion for summary judgment. Later, the court entered an order which included findings of fact and conclusions of law. The court concluded that the respondent

4

violated Rule 1.15(a) (safekeeping property), Rule 1.15(d) (safekeeping property), Rule 8.1(b) (bar admission and disciplinary matters), and Rule 8.4(a) (misconduct).

"14.    Thereafter, on June 5, 2013, the court held a sanctions hearing. During the sanctions hearing, the respondent stated, 'I have no prior record [of attorney discipline].'

"15.    In an order memorializing its findings and conclusions, the court found that the respondent misappropriated client funds. The court ordered the respondent be disbarred from the practice of law in Utah.

"16.    While the Utah disciplinary case was pending, on July 22, 2014, the respondent relinquished his license to practice law in California. In the voluntary resignation, the respondent declared the following:

'1.    I am not currently suspended from the practice of law as a result of the imposition of discipline by the California Supreme Court, nor subject to (a) a period of disciplinary probation; (b) conditions attached to a public or private reproval; or (c) the terms of an agreement in lieu of discipline with the Office of the Chief Trial Counsel;

'2.    **To my knowledge, I am not currently the subject of any disciplinary complaint, investigation or proceeding by any professional licensing agency in California or another jurisdiction;**

'3.    I am not currently charged with the commission of any felony or misdemeanor and have no knowledge that I am the subject of a current criminal investigation or grand jury proceeding for the alleged commission of a felony or misdemeanor in any jurisdiction;

5

'4. I have not been convicted of any crime for which I have failed to notify the State Bar pursuant to Business and Professions Code section 6068(a)(5). (Emphasis added.)'

The California Supreme Court accepted the voluntary resignation on October 21, 2014. It appears that the respondent never informed the bar authorities of California that, in fact, he was the subject of a disciplinary complaint in Utah at the time he relinquished his license.

"17. The respondent appealed the second district court's decision to the Utah Supreme Court. On July 21, 2015, the Utah Supreme Court entered its opinion, which provided as follows:

'INTRODUCTION

'¶ 1 Intentionally misappropriating a client's money is at or near the top of the list of things a lawyer should never do. But that is what Alvin Lundgren did when he took [J.B.]'s money from his client trust account for his own purposes. Upon discovering the defalcation, [J.B.] reported Mr. Lundgren to the Utah State Bar Office of Professional Conduct (OPC). Following an investigation, the OPC filed a complaint in district court against Mr. Lundgren. Based on his admitted misconduct, the district court granted the OPC's motion for summary judgment and disbarred Mr. Lundgren. Mr. Lundgren timely appealed. We affirm his disbarment and state again that a Utah attorney who intentionally misappropriates client funds will be disbarred unless the attorney can show truly compelling mitigating circumstances.

'BACKGROUND

'¶ 2 Mr. Lundgren had been practicing law for twenty years when [J.B.] hired him to pursue a workers' compensation claim. In February 2009, [J.B.] settled her claim for $24,906. Per her instructions, Mr. Lundgren retained $2,500 of [J.B.]'s share of the settlement proceeds in his client

6

trust account in order to pay her outstanding medical bills. However, in July of 2010, [J.B.]'s doctor, Carl Mattson, informed her that her medical bills remained outstanding. [J.B.] called Mr. Lundgren numerous times and left several messages, but Mr. Lundgren failed to respond.

'¶ 3 Ultimately, in December of 2010, [J.B.] sent Mr. Lundgren a letter asking him to account for her settlement funds. She attached a copy of Dr. Mattson's bill. Mr. Lundgren did not reply, nor did he account for the $2,500 entrusted to him.

'¶ 4 He later claimed to have lost [J.B.]'s case file. As a result of Mr. Lundgren's failure to respond and failure to use the settlement funds as directed, [J.B.] filed a complaint with the Utah State Bar. On August 12, 2011, the OPC sent Mr. Lundgren notice of [J.B.]'s informal complaint. As part of its investigation, the OPC asked Mr. Lundgren to provide bank records of the deposits and withdrawals made to and from his client trust account from March 2009 through October 2010. The OPC did not receive this information, although Mr. Lundgren claims that he sent it.

'¶ 5 The OPC referred the case to a screening panel of the Ethics and Discipline Committee, which heard the matter on January 26, 2012. At the hearing, Mr. Lundgren admitted under oath that he had taken [J.B.]'s money from his client trust account for his own personal use. He further testified that over the course of about four years, he had taken money belonging to other clients from his client trust account to cover business and personal expenses. None of Mr. Lundgren's clients authorized him to take their money from the trust account for his benefit.

'¶ 6 At some point after receiving notice of [J.B.]'s complaint, but prior to the hearing before the screening panel, Mr. Lundgren set up monthly payments of $300 to Dr. Mattson to pay [J.B.]'s medical expenses— ostensibly because he did not have enough money to pay [J.B.]'s medical bill in full. Mr. Lundgren ultimately accounted for [J.B.]'s full settlement

7

monies by paying Dr. Mattson's bill and reimbursing the rest of the money to her.

¶ 7 Following the hearing, the screening panel directed the OPC to file a formal complaint in district court against Mr. Lundgren, and the OPC did. The OPC then moved for summary judgment, which the district court granted. The court concluded that Mr. Lundgren violated rules 1.15(a) and (d) of the Utah Rules of Professional Conduct by misappropriating client funds and rule 8.1(b) by "knowingly fail[ing] to respond to a lawful demand for information" made by the OPC.

¶ 8 Thereafter, the district court conducted a sanctions hearing "to receive relevant evidence in aggravation and mitigation." SUP. CT. R. PROF'L PRAC. 14-511(f). Following the Standards for Imposing Lawyer Sanctions of the Supreme Court Rules of Professional Practice—rule 14-607—the district court considered various mitigating factors, including Mr. Lundgren's (1) "absence of a prior record of discipline," (2) "good character and reputation," and (3) "remorse." The court then determined that none of the evidence presented was "truly compelling," and thus did not justify departure from the presumptive sanction of disbarment. See SUP. CT. R. PROF'L PRAC. 14-605. The court explicitly rejected Mr. Lundgren's claim that his financial hardship should be considered a mitigating factor. Before imposing sanctions, the court also considered aggravating factors, which included Mr. Lundgren's dishonesty, his pattern of misconduct, and his extensive experience in practicing law. The court imposed the sanction of disbarment for Mr. Lundgren's misconduct. He timely appealed.

## STANDARD OF REVIEW

¶ 9 Mr. Lundgren does not challenge the grant of summary judgment with regard to his violation of rule 1.15(a) and (d). Accordingly, we are asked to review only the district court's decision to disbar Mr. Lundgren. Under the Utah Constitution, this court has the duty and the authority to

8

"govern the practice of law, including admission to practice law and the conduct and discipline of persons admitted to practice law." UTAH CONST. art. VIII, § 4. Generally, we do not overturn a district court's findings of fact unless they are "arbitrary, capricious, or plainly in error." *In re Discipline of Babilis*, 951 P.2d 207, 213 (Utah 1997). However, "in light of our constitutional mandate and the unique nature of disciplinary actions," we review district court findings in attorney discipline matters with less deference. *Id*. In this area, we retain "the right to draw different inferences from the facts" in order to "make an independent determination" of the correctness of the discipline the district court imposed. *In re Discipline of Crawley*, 2007 UT 44, ¶ 17, 164 P.3d 1232; see also *In re Discipline of Corey*, 2012 UT 21, ¶ 23 n. 13, 274 P.3d 972.

'ANALYSIS

'I.      DISBARMENT WAS THE APPROPRIATE SANCTION FOR MR. LUNDGREN'S MISCONDUCT

'¶ 10 The Utah Supreme Court Rules of Professional Practice govern, among other things, the ethical practice of law in the State of Utah and provide the standards for imposing sanctions on attorneys who violate the rules. See SUP. CT. R. PROF'L PRAC. 1.0 to 8.5 ("Rules of Professional Conduct"), 14-601 to 14-607 ("Standards for Imposing Lawyer Sanctions"). Chapter fourteen, article 6 provides the Utah State Bar with rules for imposing sanctions on attorneys who have "engaged in professional misconduct." *Id.* 14-603(a). These rules are designed to "maintain the high standard of professional conduct required of those who undertake the discharge of professional responsibilities as lawyers." *Id.* 14-602(b). Further, the rules allow judges "flexibility and creativity in assigning sanctions" when a lawyer has committed misconduct. *Id.* 14-602(d). A court should consider specific factors when imposing sanctions, including "(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." *Id.* 14-604(a)-(d).

9

'¶ 11 Though the rules allow for flexibility in most cases, there are presumptive sanctions for the most egregious types of misconduct. Disbarment is the presumptive sanction when a lawyer either "knowingly engages in professional misconduct . . . with the intent to benefit the lawyer . . . and causes serious or potentially serious injury to a party" or "engages in serious criminal conduct, a necessary element of which includes . . . misappropriation, or theft." *Id.* 14-605(a)(1), (2). And though disbarment is the harshest sanction available in the realm of attorney misconduct—"the proverbial professional death-sentence," *In re Discipline of Corey*, 2012 UT 21, ¶ 40, 274 P.3d 972—we have long said that intentional misappropriation of client funds is one of, if not the most "severe" kind of misconduct in the legal profession. *In re Discipline of Grimes*, 2012 UT 87, ¶ 15, 297 P.3d 564. Misappropriation of client funds undermines the relationship between attorney and client and damages the legal profession as a whole. Indeed, this court and others have not minced words when addressing it, describing it as "always indefensible," *In re Discipline of Babilis*, 951 P.2d 207, 217 (Utah 1997); something "we cannot tolerate," *In re Discipline of Johnson*, 2001 UT 110, ¶ 14, 48 P.3d 881; a form of "ethical dereliction," *In re Blumenstyk*, 152 N.J. 158, 704 A.2d 1, 4 (1997); "the gravest form of professional misconduct," *Att'y Grievance Comm'n v. Pattison*, 292 Md. 599, 441 A.2d 328, 333 (1982); and an act that "reflects poorly on the entire legal profession and erodes the public's confidence in lawyers." *In re Disciplinary Action Against Rooney*, 709 N.W.2d 263, 270 (Minn. 2006). As we explained in Babilis, a seminal Utah case in this area, intentional misappropriation of client funds "strikes at the very foundation of the trust and honesty that are indispensable to the functioning of the attorney-client relationship and, indeed, to the functioning of the legal profession itself." 951 P.2d at 217.

¶ 12 Because intentional misappropriation of client funds is so deeply concerning and intolerable to our profession, an attorney who is guilty of it should be disbarred. The only exception to this rule occurs if an

attorney can show "truly compelling mitigating circumstances." *In re Discipline of Ince*, 957 P.2d 1233, 1237 (Utah 1998); *Babilis*, 951 P.2d at 217. We have never explicitly defined the phrase "truly compelling mitigating circumstances," but we have said that the "mitigating factors must be significant," *Ince*, 957 P.2d at 1237-38, and should be construed "relatively narrowly." *Grimes*, 2012 UT 87, ¶ 40, 297 P.3d 564; *see also Corey*, 2012 UT 21, ¶ 37 n. 17, 274 P.3d 972. Again, the standard for sanctioning such behavior is purposely strict in order to serve the public and the profession by maintaining the trust that is so critical to the attorney-client relationship.

'A.     The "Truly Compelling Mitigating Circumstances" Standard Is Not "Illusory"

'¶ 13 The modern standard for attorney sanctions in cases of intentional misappropriation was first set out by this court in *Babilis*, where we adopted the rule that "intentional misappropriation of client funds will result in disbarment unless the lawyer can demonstrate truly compelling mitigating circumstances." 951 P.2d at 217. Mr. Lundgren argues that the truly compelling mitigating circumstances standard is "illusory" and that we should depart from it in favor of a "balancing" or rehabilitative approach. However, his briefing on this point is unpersuasive and largely inadequate. See UTAH R. APP. P. 24(a)(9) ("The argument shall contain the contentions and reasons of the appellant with respect to the issues presented . . . ."); *State v. Thomas*, 961 P.2d 299, 305 (Utah 1998) ("[R]ule 24(a)(9) requires not just bald citation to authority but development of that authority and reasoned analysis based on that authority."); *see also Water & Energy Sys. Tech., Inc. v. Keil*, 2002 UT 32, ¶ 21, 48 P.3d 888 ("[T]his court will not become simply a depository in which the appealing party may dump the burden of argument and research." He fails to provide a reasoned argument for the reversal of our existing standard. We therefore decline to abrogate it.

11

¶ 14 Mr. Lundgren's argument begins with a list of various "background illustrative cases"—cases that are summarized without further exegesis. He asserts that the district court below was "unable" to find truly compelling mitigating circumstances "because there is no precedent in recent Utah Supreme Court case history." But in fact there have been a number of cases applying the "truly compelling mitigating circumstances" standard in recent years, though it is true that no attorney has yet met that standard. *See, e.g., In re Discipline of Ennenga*, 2001 UT 111, 37 P.3d 1150; *Corey*, 2012 UT 21, 274 P.3d 972. Mr. Lundgren's primary argument appears to be, in essence, because no attorney who has misappropriated client funds since 1997 has been able to escape the presumptive sanction of disbarment by showing truly compelling mitigation, "there may be a problem with" the standard. We disagree.

¶ 15 The fact that no attorney in Utah to date has been able to show that he acted under truly compelling mitigating circumstances when he misappropriated client funds does not indicate that there is a problem with the standard, nor does it render the standard "illusory," "vague," or unenforceable. Nor do we agree with Mr. Lundgren that the standard is "worthless and of no material benefit." To the contrary, we find our strict standard for imposing sanctions in cases of intentional misappropriation to be extremely explicit, worthy, and highly beneficial to the legal profession and the public.

¶ 16 In arguing that our standard is "illusory," Mr. Lundgren grasps at a variety of sources, none of which are on point. Mr. Lundgren asserts that our standard sets the bar for showing mitigation "so impossibly high" that no attorney will ever meet it. We disagree, but in any event we need not address the question of a hypothetical case of truly compelling mitigation because Mr. Lundgren has not shown that he acted under mitigating circumstances. We agree with the OPC that the truly compelling mitigation standard "is a high burden for attorneys to meet. That does not mean it is an illusion."

12

'¶ 17 Mr. Lundgren asserts that this case presents us with "an opportunity" to "abandon" the truly compelling mitigation standard "and return to a more rational" test. We decline this opportunity because we find the test perfectly rational. As we explained when we adopted the standard,

> "[t]he honesty and loyalty that all lawyers owe their clients are irrevocably shattered by an intentional act of misappropriation, and the corrosive effect of such acts tends to undermine the foundations of the profession and the public confidence that is essential to the functioning of our legal system. Lawyers should be on notice that an intentional act of misappropriation of a client's funds is an act that merits disbarment."

*Babilis*, 951 P.2d at 217. We uphold that standard today and reiterate that an attorney who intentionally misappropriates client funds will be disbarred unless he or she can show truly compelling mitigating circumstances.

'B.     Mr. Lundgren Failed to Present Any Truly Compelling
        Mitigating Circumstances

'¶ 18 Mr. Lundgren testified under oath that he misappropriated unearned money from his client trust account for his business and personal use. On appeal, Mr. Lundgren appears to argue that he showed truly compelling mitigating circumstances in two ways:  (1) his conduct was not as bad as other disbarred attorneys and (2) he "repaid all amounts." We uphold the district court's determination that Mr. Lundgren has failed to show truly compelling circumstances that would mitigate his misconduct.

'¶ 19 "[T]he standard for departing from the presumptive sanction of disbarment is a 'truly compelling' mitigating factor in the circumstances

of [this] case, not the comparative seriousness of other cases." *Ennenga*, 2001 UT 111, ¶ 16, 37 P.3d 1150. Mr. Lundgren argues that because other attorneys have misappropriated more money than he did, he should not be disbarred. He contends the "relative severity" of his conduct was less than that of other attorneys who have been disbarred—because he took less money—and therefore he should receive a lesser punishment than disbarment. These arguments fail. Rule 14-605, which governs the imposition of sanctions, does not suggest that the amount of money misappropriated has any bearing on the seriousness of the misconduct. See SUP. CT. R. PROF'L PRAC. 14-605(a)(2)-(3) (calling for disbarment when a lawyer "engages in serious criminal conduct . . . which includes . . . misappropriation" or "engages in any other intentional misconduct involving . . . deceit"). Moreover, we review each case of misconduct individually—the relative seriousness of other cases of attorney misconduct has no bearing on the proper resolution of this case. *Ennenga*, 2001 UT 111, ¶ 16, 37 P.3d 1150.

'¶ 20 Mr. Lundgren points to *Utah State Bar v. Jardine*, a case in which the attorney, Mr. Jardine, charged unreasonable fees, deposited client retainers in his operating account before they were earned, and committed various other violations, but was only suspended. 2012 UT 67, ¶¶ 1, 83, 289 P.3d 516. Mr. Lundgren claims that his own misconduct "was far less severe." We are not persuaded by this argument. Again, as we explained in *Ennenga*, we do not compare severity across cases. 2001 UT 111, ¶ 16, 37 P.3d 1150. Mr. Lundgren cannot justify his unlawful and unethical conduct by noting that he could have done worse.

'¶ 21 Moreover, *Jardine* is distinguishable because Mr. Jardine's misconduct, though unacceptable, did not rise to the level of knowing and intentional misappropriation of client funds. 2012 UT 67, ¶¶ 10, 31-32, 289 P.3d 516. Mr. Jardine's case involved mishandling client funds—not stealing them (a subtle nuance perhaps, but an important one). *Id.* ¶¶ 48-50. Mr. Jardine was charging his clients large "nonrefundable" retainers, which he would deposit directly into his operating account—

14

and which he argued were earned upon receipt. *Id.* ¶ 48. In deeming this misconduct, we explained that although it is conceivable that an attorney—perhaps due to the benefit conferred by the person's "towering reputation"—might earn a client's retainer fee the moment she receives it, Mr. Jardine did not. *Id.* ¶ 50. We thus concluded it was misconduct under rule 1.15(a) for Mr. Jardine to deposit client retainers directly into his operating account. *Id.* ¶ 53. Mr. Lundgren, unlike Mr. Jardine, knowingly took funds that were not only unearned, but would never be earned, and were in fact earmarked for another purpose, namely, to pay [J.B.]'s medical bills.

'¶ 22 It is true that Mr. Lundgren ultimately restored [J.B.]'s funds, but this factor is not mitigating where there is no evidence to show that remorse was his motivation for restoring the funds. Tellingly, Mr. Lundgren did not self-report his unethical conduct or restore the funds to [J.B.] until after she had lodged a complaint with the OPC. Thus, it seems likely that his restoration of the funds was merely an attempt to avoid punishment. Under rule 14-607(c)(1) of the Supreme Court Rules of Professional Practice, "compelled restitution" cannot be considered a mitigating factor.

'¶ 23 And Mr. Lundgren misses the ethical point entirely when he attempts to minimize his misappropriation by asserting that it is "philosophically debatable if the client does not know of the removal of funds over which the client does not have control, whether there is actual injury." It is not philosophically debatable whether stealing money is okay so long as the victim never finds out. And in any event, [J.B.] did find out and was certainly inconvenienced in a variety of ways. Not least of these is the fact that Mr. Lundgren did not pay her medical bills as he was instructed (he was instead forced to set up a payment plan with the doctor much later), and [J.B.] had to endure the disappointment and frustration of dealing with the doctor's collection attempts. We are glad that Mr. Lundgren was ultimately able to pay [J.B.] back, but "he did not make repayment until he was forced to do so by threat of suit . . . and

15

after [the client] had made an informal complaint." *Ennenga*, 2001 UT 111, ¶ 13, 37 P.3d 1150. "The repaying of [J.B.]'s money, though the right thing to do, was not accomplished in a way that mitigates the misappropriation." *Id.*

'¶ 24 Because Mr. Lundgren has failed to show truly compelling mitigating circumstances, we need not discuss the aggravating factors in detail. Although we do note that Mr. Lundgren's dishonesty, his pattern of misappropriation, his long experience in the practice of law, his inability to accept the consequences of his actions, and his attempts to justify his misconduct are all aggravating factors. In sum, disbarment is the appropriate sanction for Mr. Lundgren's misconduct.

'CONCLUSION

'¶ 25 Today we reaffirm that the sanction for intentional misappropriation of client funds is disbarment unless an attorney can show truly compelling mitigating circumstances. Mr. Lundgren intentionally misappropriated client funds and failed to show any truly compelling mitigation. We therefore affirm the district court's order of disbarment.'

*In re Lundgren*, 355 P.3d 984, 791 Utah Adv. R. 5, 2015 UT 58 (2015). The respondent's disbarment in Utah was effective September 20, 2015.

"18.     Following his disbarment in Utah, the respondent failed to notify the Kansas disciplinary administrator of the discipline imposed.

16

"19.     On October 19, 2015, the disciplinary administrator's office received a letter from the OPC regarding the respondent's disbarment. On October 22, 2015, the disciplinary administrator's office docketed a complaint for investigation, wrote to the respondent informing him that the case had been docketed for investigation, provided the respondent with a copy of the correspondence from the OPC, and directed the respondent to provide a written response to the complaint within 20 days. The respondent failed to provide a written response to the complaint as directed.

"20.     On November 23, 2015, Terry Morgan, special investigator with the disciplinary administrator's office, wrote to the respondent. In the letter, Mr. Morgan pointed out that the respondent failed to provide a timely written response to the complaint as directed in previous correspondence. Mr. Morgan provided the respondent with 10 additional days to forward a written response to the initial complaint.

"21.     On December 3, 2015, the respondent wrote to the disciplinary administrator's office. The respondent did not provide a written response to the complaint, rather the respondent stated:

    'I am a former member of the Kansas Bar, #14733, but have not been active nor paid bar dues for many years. I was recently disbarred in Utah, and notice thereof being cause for instigating this action.

    'Please advise whether under the Kansas Rules I can qualify for ongoing bar membership. If I am no [*sic*] precluded, I will submit a plan.'

"22.     On December 9, 2015, the disciplinary administrator's office responded to the respondent's letter, stating:

    'This will acknowledge receipt of your letter dated December 3, 2015, regarding the referenced disciplinary action. In response to your inquiry, I have included a copy of Kansas Supreme Court Rule 202. Pursuant to the rule, a finding of misconduct in another jurisdiction shall be deemed conclusive evidence of misconduct for purposes of a disciplinary action pending in this state. If you have questions

17

concerning the application of the rule in this case, I would refer you to private counsel.

'I also enclose a copy of Supreme Court Rule 217 providing for the surrender of a law license during the pendency of a disciplinary matter. A surrender of license results in an immediate Order of Disbarment when a disciplinary action is pending. You may also want to discuss a surrender of license with private counsel.

'I anticipate that this matter will be submitted to the Review Committee for the Kansas Board for the Discipline of Attorneys in the very near future. If you have information that you would like submitted for consideration prior to presenting the matter to the review [*sic*] committee [*sic*] I encourage you to contact me or Terry Morgan, investigator, of this office.'

"23. On January 28, 2016, Mr. Morgan again wrote to the respondent. In the letter, Mr. Morgan again pointed out that the respondent failed to provide a written response to the complaint as directed in previous correspondence. Mr. Morgan again provided respondent with 10 additional days to submit a written response to the complaint.

"24. On March 17, 2016, the respondent provided a response to the complaint. The respondent's letter provided:

'Your office was provided notice of disciplinary action against me. You have generously requested input from [me] regarding the action. Please consider my response below.

'I was licensed to practice law in the State of Utah in 1989. Later I was admitted to Kansas, Missouri and California. My history in all states was clean, except for an incident in California in 1993-1994 prior to my admission to the California Bar. In that incident my firm and one non-attorney employee had been sued in Federal Court for the Central

18

District of California. I attended an informal planning conference. At that conference I stated I appeared on behalf of the employee. The judge reported me to the California Bar for appearing for the client prior to being admitted to the bar. I was admitted to the California bar shortly thereafter. **That issue was resolved with the California Bar.**

'There are no other incidents until the Utah Bar sought sanctions against me for failure to properly maintain a trust account in 2012 (Case #024500019, 2d District Court, Morgan County, Utah.) In short those allegations surrounded a complaint by a client that a medical bill had not been paid upon the completion of her case. The client's complaint was correct. Her bill had not been timely paid, partly due to office problems (a flood had destroyed many office records, including computer copies.) The bill was paid after the client filed the complaint. Nevertheless, the Utah Bar proceeded with prosecution for violations of the client's trust account. I admitted to the violation, and paid the client the full amount to which she was entitled.

'Utah takes a very strict position against any kind of violation of client trust funds. **Notwithstanding that the client was fully reimbursed prior to the filing of the bar complaint**, the State bar prosecuted this transgression aggressively claiming that the strict liability sanction of disbarment applies in all cases without exception. I argued that [*sic*] the facts that I took responsibility for the failure to timely pay, but then paid in full the client amounts due (about $1500.)

'The Utah Supreme Court concluded that there was no mitigation sufficient to deny disbarment. While I disagree with the rationale used in the Supreme Court opinion, that basically states that there is no mitigation sufficient to avoid the presumptive sanction of disbarment, I am subject to their final decision.

'I was disbarred effective the summer of 2015.

19

'I had no Kansas clients during the time of the pendency of the Utah action. I have not attempted to solicit any other clients since the Utah action.

'I understand that the Kansas rules assume that a violation in a foreign jurisdiction is conclusive of a violation in Kansas, I would be extremely grateful for an opportunity to further defend myself before the State [*sic*] Kansas to preserve my right to practice law in Kansas, or seek reinstatement.'

The two highlighted statements above are worth commenting on. First, the respondent stated, '[t]hat issue was resolved with the California bar.' The respondent's statement is misleading. The respondent's unauthorized practice of law in California resulted in a suspension from the practice in California and later, on a reciprocal basis, in Missouri. Second, the respondent asserted that J.B. was fully reimbursed prior to the filing of the bar complaint. This statement is false.

"25.     On March 29, 2016, the respondent sent a follow-up letter. In the respondent's follow-up letter, he pointed out mitigating circumstances that apply. Additionally, the respondent stated:

'As mentioned in the prior letter, the Supreme Court does not recognize mitigation in a cognizable form. That court stated:  that an attorney must demonstrate "truly compelling mitigating circumstances." However that court has not been able to articulate what that phrase means. That court has not recognized *any* truly compelling mitigating circumstances since that standard was articulated in In Re: The Discipline Of Jean Robert Babilis (951 P.2d 207 Utah 1997).

'Kansas has not adopted this strict liability standard. Wherefore, I respectfully request that your office consider a path to allow me to practice law in Kansas under such guidelines as you may direct.'

20

"26.    On April 6, 2016, the disciplinary administrator's office sent a letter to the respondent, informing the respondent that the disciplinary case had been submitted to the review committee and that the review committee directed a formal hearing.

"27.    On July 20, 2016, the disciplinary administrator filed a formal complaint in the instant case. Thereafter, on August 15, 2016, the respondent filed an answer to the formal complaint.

"28.    On October 6, 2016, the hearing panel conducted a hearing on the formal complaint.

"29.    While this action was pending, on October 26, 2016, the Missouri Supreme Court issued an order disbarring the respondent.

"*Conclusions of Law*

"30.    Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.15(a), KRPC 1.15(d), KRPC 8.3(a), KRPC 8.4(c), Kan. Sup. Ct. R. 207(c), and Kan. Sup. Ct. R. 208(c), as detailed below.

"KRPC 1.15

"31.    Lawyers must keep the property of their clients safe.  KRPC 1.15 specifically provides:

'(a)    A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of Kansas. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

21

. . . .

'(d) Preserving identity of funds and property of a client.

. . . .

(2) The lawyer shall:

(i)      Promptly notify a client of the receipt of the client's funds, securities, or other properties.

(ii)      Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.

(iii)      Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accountings to the client regarding them.

(iv)      Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

(v)      Produce all trust account records for examination by the Disciplinary Administrator upon request of the Disciplinary Administrator in compliance with Rule 216A.'

In this case, the respondent failed to properly safeguard his client's property when he took J.B.'s money from his client trust account and converted it to his own personal use. The respondent failed to properly safeguard his clients' property when, over the course of about 4 years, he took money belonging to other clients from his client trust account to cover business and personal expenses. The respondent failed to properly safeguard his clients' property when he failed to maintain complete records of his clients' funds. Finally, the respondent failed to properly safeguard his clients' funds when he failed to

22

promptly pay or deliver funds to the client as requested. Therefore, the hearing panel concludes that the respondent violated KRPC 1.15(a) and KRPC 1.15(d).

"KRPC 8.4(c)

"32.     'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The respondent engaged in conduct that involved dishonesty when he converted J.B.'s funds and other clients' funds to his own use. Additionally, the respondent engaged in dishonest conduct when he executed the voluntary resignation form in California in 2014, which included a false statement. Finally, the respondent violated KRPC 8.4(c) when he made false and misleading statements in his correspondence with the disciplinary administrator's office. As such, the hearing panel concludes that the respondent violated KRPC 8.4(c).

"KRPC 8.3(a) and Kan. Sup. Ct. R. 207(c)

"33.     Lawyers must report misconduct. KRPC 8.3(a) and Kan. Sup. Ct. R. 207(c) provide the requirements in this regard. 'A lawyer having knowledge of any action, inaction, or conduct which in his or her opinion constitutes misconduct of an attorney under these rules shall inform the appropriate professional authority.' KRPC 8.3(a). Kan. Sup. Ct. R. 207(c) provides:

> 'It shall be the further duty of each member of the bar of this state to report to the Disciplinary Administrator any action, inaction, or conduct which in his or her opinion constitutes misconduct of an attorney under these rules.'

The respondent failed to inform the Kansas disciplinary administrator following his disbarment in Utah. As such, the hearing panel concludes that the respondent violated KRPC 8.3(a) and Kan. Sup. Ct. R. 207(c).

23

"Kan. Sup. Ct. R. 208(c)

"34.     Attorneys must provide the Clerk of the Appellate Courts with current contact information. Specifically, all attorneys must 'within thirty days after any change of address notify the Clerk of such change.' Kan. Sup. Ct. R. 208(c). After vacating 5015 W. Old Highway 30, Mt. Green, Utah 84050, the respondent failed to notify the Clerk of the Appellate Courts. It is unclear when the respondent moved from that address, however, it was sometime prior to the hearing on the formal complaint. The respondent's current address is 220 South Stagecoach Drive, Veyo, Utah 84782. The hearing panel, therefore, concludes that the respondent failed to provide the Clerk of the Appellate Courts with the respondent's current address in violation of Kan. Sup. Ct. R. 208(c).

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"35.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"36.     *Duty Violated*.  The respondent violated his duty to his clients to properly safeguard their property.

"37.     *Mental State*.  The respondent knowingly and intentionally violated his duty.

"38.     *Injury*.  As a result of the respondent's misconduct, the respondent caused actual injury to his client and the legal profession.

24

"Aggravating and Mitigating Factors

"39. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

"40. *Prior Disciplinary Offenses*. The respondent has been previously disciplined. In 1994, the California Supreme Court suspended the respondent from the practice of law after the respondent engaged in the unauthorized practice of law. The Missouri Supreme Court entered a reciprocal suspension for that same conduct. Then, in 2015, the respondent was disbarred by the Utah Supreme Court for the underlying conduct in this case. Finally, in 2016, the Missouri Supreme Court also disbarred the respondent for the conduct which gave rise to this case.

"41. *Dishonest or Selfish Motive*. The respondent converted client property to his own use, provided a document to the California Supreme Court which contains false information, and provided false information to the disciplinary administrator's office in written correspondence. Accordingly, the hearing panel concludes that the respondent's misconduct was motivated by dishonesty.

"42. *Multiple Offenses*. The respondent committed multiple rule violations. The respondent violated KRPC 1.15(a), KRPC 1.15(d), KRPC 8.3(a), KRPC 8.4(c), Kan. Sup. Ct. R. 207(c), and Kan. Sup. Ct. R. 208(c). Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

"43. *Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process*. The respondent failed to provide a timely written response to the complaint in this case. The respondent's failure to provide a timely written response to the complaint amounts to bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules and orders of the disciplinary process.

25

"44.    *Refusal to Acknowledge Wrongful Nature of Conduct*.  Throughout the proceedings in Utah, the respondent minimized the significance of his misconduct. The respondent's minimization of his conduct continued in this case.

"45.    *Vulnerability of Victim*.  J.B. was vulnerable to the respondent's misconduct.

"46.    *Substantial Experience in the Practice of Law*.  The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1990. At that time, the respondent had already been admitted to practice in the State of Utah. At the time of the misconduct, the respondent had been practicing law for more than 20 years.

"47.    *Illegal Conduct, Including that Involving the Use of Controlled Substances*.  The respondent admitting using funds belonging to J.B. and other clients over a period of years. This conduct constitutes theft. Further, it should be noted that while the respondent fully repaid J.B., it is impossible to determine whether all his clients were repaid. The record is clear that no other clients complained that the respondent failed to provide them with funds to which they were entitled.

"48.    Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"49.    *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions*.  Despite his minimization, the respondent admitted the underlying facts of the case.

"50.    *Imposition of Other Penalties or Sanctions*.  The Utah Supreme Court and the Missouri Supreme Court have disbarred the respondent for the misconduct.

"51.    *Remorse*.  At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct.

26

"52.     *Remoteness of Prior Offenses.*  The discipline imposed in California in 1998 and in Missouri in 2000 is remote in character and in time to the misconduct in this case.

"53.     In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.11     Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.'

'5.11     Disbarment is generally appropriate when:

(a)     a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses;

(b)     a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.'

"*Recommendation*

"54.     The disciplinary administrator recommended that the hearing panel reject the respondent's request for probation and instead recommend that the respondent be disbarred. In his answer, the respondent included a request for probation. At the hearing,

the respondent recommended that the hearing panel give him 'an opportunity to retain or reinstate' his license to practice in Kansas. The respondent argued that he has a financial need to practice law. Finally, the respondent asked to be allowed to prove himself to the community that he is responsible.

"55.     According to Kan. Sup. Ct. R. 211(g)(3), a hearing panel may not recommend that a respondent be placed on probation unless:

'(i)      the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least fourteen days prior to the hearing on the Formal Complaint;

'(ii)     the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

'(iii)    the misconduct can be corrected by probation; and

'(iv)     placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.'

"56.     The respondent's request for probation is fraught with problems. Initially, it is worth noting that the respondent could not recall whether he first read the rule which sets forth the procedure for probation. The respondent's plan is not workable, substantial, or detailed. The respondent failed to put his plan of probation into effect. While the respondent argued that he could not put it into effect, there are certainly steps he could have taken which he did not take. Next, the respondent's misconduct included dishonest conduct and dishonest conduct cannot be corrected by probation. *In re Stockwell*, 296 Kan. 860, 295 P.3d 572 (2013). Finally, placing the respondent on probation is not in the best interests of the legal profession nor the citizens of the State of Kansas.

"57.    The respondent has played fast and loose with the truth in the disciplinary proceedings in Utah, in his voluntary resignation in California, and during the disciplinary proceedings here in Kansas. Despite the 1998 order suspending his license to practice law in California, during the Utah sanctions hearing, the respondent testified that he had not previously been disciplined. In the voluntary resignation of his license to practice law in California, despite the pending complaint in Utah, the respondent asserted that he had no disciplinary complaints pending in any jurisdiction. Finally, in correspondence with the disciplinary administrator's office, the respondent falsely claimed that J.B. was fully reimbursed before the bar complaint was filed. Regarding his misconduct in California, the respondent stated that the 'issue was resolved with the California bar,' when in fact, in 1998, his license to practice law in California had been suspended. Further, the respondent failed to report his 2000 reciprocal suspension in Missouri and his 2015 disbarment in Utah.

"58.    Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be disbarred.

"59.    Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2017 Kan. S. Ct. R. 251). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaint, to which he filed an answer. Respondent was also given adequate notice of the panel hearing where he appeared in person. He filed no exceptions to the panel's final hearing report. With no exceptions before us, the panel's findings of fact are deemed admitted. Supreme Court Rule 212(c), (d) (2017 Kan. S. Ct. R. 255). Furthermore, the evidence before the hearing panel establishes the charged misconduct in violation of KRPC 1.15(a) and (d) (2017 Kan. S. Ct. R. 326) (safekeeping property); 8.3(a) (2017 Kan. S. Ct. R. 378) (reporting professional misconduct); 8.4(c) (2017 Kan. S. Ct. R. 379) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); Kansas Supreme Court Rule 207(c) (2017 Kan. S. Ct. R. 246) (failure to report action); and Kansas Supreme Court Rule 208(c) (2017 Kan. S. Ct. R. 246) (failure to notify Clerk of the Appellate Courts of change of address) by clear and convincing evidence and supports the panel's conclusions of law. We therefore adopt the panel's findings and conclusions.

The only remaining issue before us is the appropriate discipline for respondent's violations. At the panel hearing, the office of the Disciplinary Administrator recommended that the respondent be disbarred. The hearing panel also unanimously recommended that the respondent be disbarred. The respondent requested probation, that he be given an opportunity to retain or reinstate his license, and that he be allowed to prove to the community that he is a responsible person.

The day prior to the hearing before this court, the respondent notified the office of the Clerk of the Appellate Courts that he would not appear in person or by counsel. The clerk informed him that pursuant to Supreme Court Rule 212(e)(5) he was required to appear and that any response from him must be submitted in writing; the clerk gave respondent the clerk's office fax number.

At the hearing before this court, the respondent did not appear. The Disciplinary Administrator recommended that the respondent be disbarred. We agree with the

30

recommendation of both the Disciplinary Administrator and the panel, and we hold that respondent is disbarred from the practice of law in the state of Kansas.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Alvin R. Lundgren be and he is hereby disbarred in accordance with Supreme Court Rule 203(a)(1) (2017 Kan. S. Ct. R. 234), effective upon the date of the filing of this opinion.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this opinion be published in the official Kansas Reports.

BEIER, J., not participating.

KATHRYN GARDNER, J., assigned.[1]

---

[1]**REPORTER'S NOTE:** Judge Gardner, of the Kansas Court of Appeals, was appointed to hear case No. 117,201 vice Justice Beier under the authority vested in the Supreme Court by K.S.A. 20-3002(c).